## Mediation date

From: Andre W. (wt_andre@yahoo.com)

To: whjohnson@jambg.com

Cc: nolanyvonne1964@gmail.com; karenevans@litigationresolution.com

Date: Monday, May 4, 2020, 06:52 AM PDT

Good day Mr. Johnson,

Today is May 4st 2020 as such, and you have not confirm with Ms Evan's email that was sent April 27th 2020 with her being available for mediation on May 8th 2020 confirm with Ms Evan's.  May 8th 2020 is this Friday.

Both you and your client indicated that what was done to me is because I am a criminal but neither  you are your client has provided me with proof as to why you'll label me as such. Your office has taken advantage of my lack of knowledge of the civil rules as it pertain to this civil case, as such, have had the judge siding/ granting your every request delaying and prolong this case.

Mr. Johnson, April 3, 2017 did happen and no amount of misdirection, manipulation and delay Can change that fact.

The judge in this case stated that we have a court ordered mediation, he had extended the trial date to 11/23/2020. However, there was no mention of a change in the mediation date. You indicated that your client is willing to do the mediation in May, available dates, 6,7, or 8th.

Your office and client has agreed to having Ms. Karen Evans firm conducts mediation, she has indicated via email that she has May 8, 2020 available and is more than prepared to preform the mediation via Zoom.

To date neither you and/or office had responded I guess you are again trying to find another way to manipulate the case once again. I don't believe that Ms. Evans' firm has time to waist.

Sent from Yahoo Mail on Android

Andre v. Biro, et. al.

From:  Hampton Johnson (whjohnson@jambg.com)

To:    wt_andre@yahoo.com

Cc:    young@jambg.com

Date:  Monday, March 23, 2020, 11:11 AM PDT

Good afternoon Mr. Andre,

  Pursuant to the Local Rules for the Southern District, I am required to confer with you prior to filing any motion requesting relief from the Court, except in limited circumstances. I intend to file a motion to strike the additional officers you have named [all officers not named Biro] from this claim because you have not pled any causes of action against them and the time within which to do so has expired. Please advise if you oppose my motion or agree to my motion. Thank you.

Sincerely,

**W. Hampton Johnson IV**
Partner
Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A.
2455 East Sunrise Boulevard
Suite 1000
Ft. Lauderdale, Florida 33304
Phone: 954-463-0100
Fax:    954-463-2444

The information transmitted is privileged and confidential.  It is intended solely for the review and use of the named recipient.  Any other review or distribution of the communication is strictly prohibited.  If you have received this transmittal in error, please (1) notify the sender immediately by telephone (954) 463-0100, (2) delete this information from all databases, and, (3) if printed, return all pages to the sender by U.S. mail.  You will be reimbursed for any long distance charges and mailing costs.

6/5/2020  (f0 351 unread) whj at andre@yahoo.com - Yahoo Mail

Find messages, documents, photos or people   ⌄

Home

Compose

Back        Archive        Move    Delete    Spam        5

Inbox        999+
Unread
Starred
Drafts        22
Sent
Archive
Spam
Trash
    Less

Views        Hide
    Photos
    Documents
    Deals
    Receipts
    Groceries
    Subscriptions
    Travel

Folders        Hide
    New Folder
    Drafts
    Junk
    my        47
    my1        4
    Synced Messa...  2

Andre v Biro, et al. / Case #19-cv-       Yahoo/Sent  ☆
62181  5

 **Andre W.**  Good Evening, Mr. W    Tue, Feb 18 at 2:48 PM

 **Hampton Johnson** <whj  📠  Wed, Feb 19 at 2:33 PM  ☆
    **To:** Andre W.

Good evening Mr. Andre,

  Again, it is the City's position that mediation will not be
meaningful if it occurs prior to any discovery taking place in this
claim.  Your discovery responses are due on **March 5, 2020,** and
once received, the City will then conduct additional discovery and
issue subpoenas to entities identified therein.  If mediation is
scheduled prior to the City having the opportunity to fully evaluate
your claim and take your deposition, the result will likely be an
outcome where no settlement is reached.

- Hampton Johnson

  › Show original message

—
**W. Hampton Johnson IV**
Partner
Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A.
2455 East Sunrise Boulevard
Suite 1000
Ft. Lauderdale, Florida 33304
Phone: 954-463-0100
Fax:    954-463-2444

The information transmitted is privileged and
confidential.  It is intended solely for the review and use
of the named recipient.  Any other review or distribution
of the communication is strictly prohibited.  If you have
received this transmittal in error, please (1) notify the
sender immediately by telephone (954) 463-0100, (2)
delete this information from all databases, and, (3) if
printed, return all pages to the sender by U.S. mail.  You
will be reimbursed for any long distance charges and
mailing costs.


**Hampton Johnson**

whjohnson@jamba.com
+ Add to contacts

Find messages, documents, photos or people ⌄  Home

| Compose | | Back | Archive | Move | Delete | Spam | 5 |

**Inbox** 999+
Unread
Starred
Drafts 22
Sent
Archive
Spam
Trash
Less

Views Hide
Photos
Documents
Deals
Receipts
Groceries
Subscriptions
Travel

Folders Hide
New Folder
Drafts
Junk
my 47
my1 4
Synced Messa... 2

### Re: Mediation date

Yahoo/Inbox



**Yvonne Nolan** <nolanyvon  🖨  Fri, Jun 5 at 12:27 PM
**To:** Hampton Johnson
**Cc:** Carey Young

Mr. Johnson,
I am in receipt of your email, yes I did receive the prior email regarding the mediation and I am sure you received the email from my nephew regarding the deposition. If not, let me reiterate. I am not incline to do a deposition any questions you need to asK me, that is relevant to this case, send it to me via email.  By the way, we have asked for several documents form you/ your client and you have yet to respond.

This game that your are playing Is  counterproductive and unprofessional and it seems like you plan to take all those involved in this case, along for this ride. Is this an indication that judge Federico Moreno is ok with your way of handling this case?

I know you represent people who believe that they are above the law, and  that they can do and say whatever they want without being held accountable for their actions and it seems like you are a big support of that.  Black Lives Matter.

Sent from my iPhone

> On Jun 4, 2020, at 10:15 AM, Hampton Johnson <WHJohnson@jambg.com> wrote:
>
>
> Good morning Ms. Nolan,
>
>  Please see below correspondence from May 7, 2020, wherein the City advised based on the Court's order, the City is not inclined to mediate this claim at this time. You were copied on my email at that time. In any event, please advise of your availability for deposition in the next two weeks. Thank you.
>
> Sincerely,
> W. Hampton Johnson IV
> ———— Forwarded message ————
> **From: Hampton Johnson**
> <WHJohnson@jambg.com>
> Date: Thu, May 7, 2020 at 8:58 AM

**Yvonne Nolan**  ⋮
nolanyvonne1964@qmail.com
+ Add to contacts

## Mediation date

From:  Andre W. (wt_andre@yahoo.com)

To:      WHJohnson@jambg.com

Cc:      nolanyvonne1964@gmail.com; karenevans@litigationresolution.com

Date:  Monday, May 4, 2020, 06:52 AM PDT

Good day Mr. Johnson,

Today is May 4st 2020 as such, and you have not confirm with Ms Evan's email that was sent April 27th 2020 with her being available for mediation on May 8th 2020 confirm with Ms Evan's.  May 8th 2020 is this Friday.

Both you and your client indicated that what was done to me is because I am a criminal but neither  you are your client has provided me with proof as to why you'll label me as such. Your office has taken advantage of my lack of knowledge of the civil rules as it pertain to this civil case, as such, have had the judge siding/ granting your every request delaying and prolong this case.

Mr. Johnson, April 3, 2017 did happen and no amount of misdirection, manipulation and delay
Can change that fact.

The judge in this case stated that we have a court ordered mediation, he had extended the trial date to 11/23/2020. However, there was no mention of a change in the mediation date. You indicated that your client is willing to do the mediation in May, available dates, 6,7, or 8th.

Your office and client has agreed to having Ms. Karen Evans firm conducts mediation, she has indicated via email that she has May 8, 2020 available and is more than prepared to preform the mediation via Zoom.

To date neither you and/or office had responded I guess you are again trying to find another way to manipulate the case once again. I don't believe that Ms. Evans' firm has time to waist.

Sent from Yahoo Mail on Android



Find messages, documents, photos or people ⌄ Home

| Compose | | Back | Archive | Move | Delete | Spam | 5 |

Inbox 999+
Unread
Starred
Drafts 22
Sent
Archive
Spam
Trash

Less

Views Hide
  Photos
  Documents
  Deals
  Receipts
  Groceries
  Subscriptions
  Travel

Folders Hide
  New Folder
  Drafts
  Junk
  my 47
  my1 4
  Synced Messa... 2

**Andre v. Ryan Biro, et. al. / Case #19-cv-62181** 12    Yahoo/Inbox ☆

 Hampton Johnson <wh 🖨 Mon, Feb 10 at 8:24 AM ☆
To:
Wt_andre@yahoo.com
Cc: Carey Young

Good morning Mr. Andre,

  I wanted to reach out to you again to try and coordinate a date, time, and mediator for the Court ordered mediation which must occur on or prior to **June 5, 2020.** The Court ordered deadline for reaching an agreement is today, **February 10, 2020.** Based on your prior pleading attempting schedule mediation, I assume you would prefer to mediate with Karen Evans. I have no objection to the use of this mediator, however, please advise your availability for the month of May to mediate. Thank you.

Sincerely,

**W. Hampton Johnson IV**
Partner
Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A.
2455 East Sunrise Boulevard
Suite 1000
Ft. Lauderdale, Florida 33304
Phone: 954-463-0100
Fax:  954-463-2444

The information transmitted is privileged and confidential.  It is intended solely for the review and use of the named recipient.  Any other review or distribution of the communication is strictly prohibited.  If you have received this transmittal in error, please (1) notify the sender immediately by telephone (954) 463-0100, (2) delete this information from all databases, and, (3) if printed, return all pages to the sender by U.S. mail.  You will be reimbursed for any long distance charges and mailing costs.

↩ ↩↩ ➡ •••

 Andre W. Sent from Yahoo Ma Tue, Feb 11 at 8:27 AM


Karen Evans
karenevans@litigationresolutio
(305) 371-3250
+ Add to contacts

Find messages, documents, photos or people     ⌄               Home

**Compose**

| | |
|---|---|
| Inbox | 999+ |
| Unread | |
| Starred | |
| Drafts | 22 |
| Sent | |
| Archive | |
| Spam | |
| Trash | |
| Less | |

**Views**    Hide
- Photos
- Documents
- Deals
- Receipts
- Groceries
- Subscriptions
- Travel

**Folders**    Hide
- New Folder
- Drafts
- Junk

| | |
|---|---|
| my | 47 |
| my1 | 4 |
| Synced Messa... | 2 |

Back     Archive    Move    Delete    Spam     5

to mediate this claim on May 5, 2020. Due to the new trial order and the current COVID-19 global pandemic, we will need to postpone mediation. I will continue to try and conduct depositions and discovery in the most safe and effective manner possible at this time.

Sincerely,
W. Hampton Johnson IV

> Show original message

--

**W. Hampton Johnson IV**
Partner
Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A.
2455 East Sunrise Boulevard
Suite 1000
Ft. Lauderdale, Florida 33304
Phone: 954-463-0100
Fax:    954-463-2444

The information transmitted is privileged and confidential.  It is intended solely for the review and use of the named recipient.  Any other review or distribution of the communication is strictly prohibited.  If you have received this transmittal in error, please (1) notify the

sender immediately by telephone (954) 463-0100, (2) delete this information from all databases, and, (3) if printed, return all pages to the sender by U.S. mail.  You will be reimbursed for any long distance charges and mailing costs.



**Reply, Reply All or Forward**

 **Hampton Johnson**
whjohnson@jambg.com
+ Add to contacts



Find messages, documents, photos or people    ⌄        Home

Compose

| Back | Archive | Move | Delete | Spam | 5 |

Inbox    999+
Unread
Starred
Drafts    22
Sent
Archive
Spam
Trash
Less

Views    Hide
  Photos
  Documents
  Deals
  Receipts
  Groceries
  Subscriptions
  Travel

Folders    Hide
  New Folder
  Drafts
  Junk
  my    47
  my1    4
  Synced Messa...  2

**Andre v. Biro**  8                                    Yahoo/Sent  ☆

**Hampton Johnson** <whj    🖶    Wed, Mar 4 at 5:14 AM  ☆
**To:** Andre W.

Good morning Mr. Andre,

 As a courtesy reminder, your responses to written discovery are due to be served to my client tomorrow, March 5th. Thank you.

Sincerely,

**W. Hampton Johnson IV**
Partner
Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A.
2455 East Sunrise Boulevard
Suite 1000
Ft. Lauderdale, Florida 33304
Phone: 954-463-0100
Fax:   954-463-2444

The information transmitted is privileged and confidential.  It is intended solely for the review and use of the named recipient.  Any other review or distribution of the communication is strictly prohibited.  If you have received this transmittal in error, please (1) notify the sender immediately by telephone (954) 463-0100, (2) delete this information from all databases, and, (3) if printed, return all pages to the sender by U.S. mail.  You will be reimbursed for any long distance charges and mailing costs.

↰  ↞  ➡  •••

**Andre W.**  Good evening Mr. Jo    Wed, Mar 4 at 8:37 PM

**Hampton Johnson** <wh    🖶    Wed, Mar 11 at 7:50 AM  ☆
**To:**
wt_andre@yahoo.com

Good morning Mr. Andre,

 I am requesting an extension of all pretrial deadlines for our case based on outstanding discovery that needs to be

Find messages, documents, photos or people ⌄          Home

Compose

Back          Archive    Move    Delete    Spam    5

Inbox        999+
Unread                    Depositions via Zoom   4          Yahoo/Inbox ☆
Starred
Drafts        22          H    Hampton Johnson <wh   🖶   Thu, Apr 16 at 12:49 PM   ☆
Sent                          To: Andre W.
Archive
Spam                         Good afternoon Mr. Andre,
Trash
  Less                          Please advise if your Aunt has access to a phone, iPad, or
                             computer with camera to appear for deposition via Zoom
Views        Hide            conference. Thank you.
    Photos
    Documents                Sincerely,
    Deals
    Receipts                 **W. Hampton Johnson IV**
    Groceries                Partner
    Subscriptions            Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A.
    Travel                   2455 East Sunrise Boulevard
                             Suite 1000
Folders      Hide           Ft. Lauderdale, Florida 33304
  New Folder                 Phone: 954-463-0100
  Drafts                     Fax:    954-463-2444
  Junk
  my          47             The information transmitted is privileged and
  my1          4             confidential.  It is intended solely for the review and use
  Synced Messa... 2          of the named recipient.  Any other review or distribution
                             of the communication is strictly prohibited.  If you have
                             received this transmittal in error, please (1) notify the
                             sender immediately by telephone (954) 463-0100, (2)
                             delete this information from all databases, and, (3) if
                             printed, return all pages to the sender by U.S. mail.  You
                             will be reimbursed for any long distance charges and
                             mailing costs.

                                 ↰    ↞    ➜    •••

                         wt_andre <wt_andre@yah   🖶   Fri, Apr 24 at 9:41 AM   ☆
                         To:
                         nolanyvonne1964@gmail.c

                         Sent from my T-Mobile 4G LTE Device



Hampton Johnson
whjohnson@jambq.com
+ Add to contacts



Pursuant to the Court's order I have attached below, the City is no longer inclined to mediate this matter at this time. Thank you.


Sincerely,

W. Hampton Johnson IV


On Mon, May 4, 2020 at 9:52 AM Andre W. <wt_andre@yahoo.com> wrote:

Good day Mr. Johnson,

Today is May 4st 2020 as such, and you have not confirm with Ms Evan's email that was sent April 27th 2020 with her being available for mediation on May 8th 2020 confirm with Ms Evan's.  May 8th 2020 is this Friday.

Both you and your client indicated that what was done to me is because I am a criminal but neither  you are your client has provided me with proof as to why you'll label me as such. Your office has taken advantage of my lack of knowledge of the civil rules as it pertain to this civil case, as such, have had the judge siding/ granting  your every request delaying and prolong this case.

Mr. Johnson, April 3, 2017 did happen and no amount of misdirection, manipulation and delay
Can change that fact.

The judge in this case stated that we have a court ordered mediation, he had extended the trial date to 11/23/2020. However, there was no mention of a change in the mediation date. You indicated that your client is willing to do the mediation in May, available dates, 6,7, or 8th.

Your office and client has agreed to having Ms. Karen Evans firm conducts mediation, she has indicated via email that she has May 8, 2020 available and is more than prepared to preform the mediation via Zoom.

To date neither you and/or office had responded I guess you are again trying to find another way to manipulate  the case once again. I don't believe that Ms. Evans' firm has time to waist.


Sent from Yahoo Mail on Android


--

**W. Hampton Johnson IV**

Partner

Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A.

2455 East Sunrise Boulevard

Suite 1000

Ft. Lauderdale, Florida 33304

Phone: 954-463-0100

Fax:    954-463-2444

## RE: Mediation date

From:  Karen Evans (karenevans@litigationresolution.com)

To:     WHJohnson@jambg.com; wt_andre@yahoo.com

Cc:     nolanyvonne1964@gmail.com; young@jambg.com

Date:  Thursday, May 7, 2020, 10:41 AM PDT

Thank you for letting me know; I will close my file on this matter.  If at some future date the parties wish to mediate this action, it would be my pleasure to work with all of you.

Wishing everyone good health!

*Karen*

Karen Evans, Esquire

Suite 1229

The Historic Alfred I. DuPont Building

169 East Flagler Street

Miami, Florida  33131

Tel: 305-371-3250

Fax: 305-371-3341

E-mail: KarenEvans@LitigationResolution.com

**From:** Hampton Johnson <WHJohnson@jambg.com>
**Sent:** Thursday, May 7, 2020 8:58 AM
**To:** wt_andre@yahoo.com
**Cc:** nolanyvonne1964@gmail.com; Karen Evans <karenevans@litigationresolution.com>; Carey Young <young@jambg.com>
**Subject:** Re: Mediation date

Good morning Mr. Andre,

6/5/2020                                              Yahoo Mail - RE: Mediation Date

The information transmitted is privileged and confidential.  It is intended solely for the review and use of the named recipient.  Any other review or distribution of the communication is strictly prohibited.  If you have received this transmittal in error, please (1) notify the sender immediately by telephone (954) 463-0100, (2) delete this information from all databases, and, (3) if printed, return all pages to the sender by U.S. mail.  You will be reimbursed for any long distance charges and mailing costs.

## Re: Andre v. Biro, et. al.

From: Andre W. (wt_andre@yahoo.com)

To:     whjohnson@jambg.com

Date:  Friday, March 27, 2020, 09:50 AM PDT

Good Morning Mr. Johnson,

I am in receipt of your email regarding the other officers.

First and foremost I did not receive a letter from your firm indicating that you represents Biro's  accomplices as well, and at no time in our back and forth email and/or correspondences did you convey that information.

I notice that you often address your client Biro  as 'individually" and at time you would have  "Biro, et, al" like you have now.  I am assuming that is your underhanded way of indicating that your firm represents all of Sunrise police officers.

You asked in what way that the other officers are a party to this crime against me, they are Biro's accomplices, they took part in the brutal assault against me, they took part in trying to send me away for 30 years. They took part in what was done to me at the hospital.  They work like gang members, and if someone is beaten up/assaulted  by a gang of more than ten people and can only identify one or two does not mean that the  others were not a party to the crime, when it is well known that they are always together.

 Here are some of the meanings and definitions according to court laws that you are supposed to follow that you are trying to find ways to manipulate the unlawful acts committed by your client and his accomplices.  I am  providing you with some information case laws, etc. I would like a full explanation or a full description in details in your own words, on how it doesn't apply to them. In other words you as a attorney that mastered the skills of your profession and acknowledge all the unlawful misconduct within his client and his peers.

Hide quoted text

Here are some of the facts in case laws on accessory after the fact of a crimes.

Accessory Before The FactPrimary tabs

Definition

A person who aids, abets, or encourages another to commit a crime but who is not present at the scene. An accessory before the fact, like an accomplice, may be held criminally liable to the same extent as the principal. Many jurisdictions refer to an accessory before the fact as an accomplice.

Illustrative case law

See, e.g. Standefer v. U.S., 447 U.S. 10 (1980).

Under the English common law, an accomplice is a person who actively participates in the commission of a crime, even if they take no part in the actual criminal offense. For example, in a bank robbery, the person who points the gun at the teller and demands the money is guilty of armed robbery. Anyone else directly involved in the commission of the crime, such as the lookout or the getaway car driver, is an accomplice, even if in the absence of an underlying offense keeping a lookout or driving a car would not be an offense.

An accomplice differs from an accessory in that an accomplice is present at the actual crime, and could be prosecuted even if the main criminal (the principal) is not charged or convicted. An accessory is generally not present at the actual crime, and may be subject to lesser penalties than an accomplice or principal.

At law, an accomplice has lesser guilt than the person he or she is assisting, is subject to lesser prosecution for the same crime, and faces the smaller criminal penalties. As such, the three accomplices to the bank robbery above can also to a degree be found guilty of armed robbery even if only one stole money.

The fairness of the doctrine that the accomplice is still guilty has been subject to much discussion, particularly in cases of capital crimes. Accomplices have been prosecuted for felony murder even if the actual person who committed the murder died at the crime scene or otherwise did not face capital punishment.

In jurisdictions based on the common law, the concept of an accomplice has often been heavily modified by statute, or replaced by new concepts entirely Some crimes are committed by one person and some are coordinated by several actors. Different crimes may require more or less people to pull off, but in many cases, there is more than one person involved in the crime. To ensure all liable parties who contributed to a crime are prosecuted, California law allows the prosecution of all persons involved in a crime, regardless to what degree they were involved. In many crimes, there are multiple actors who have various roles. While not every role is a crime in and of itself, because it supports the crime being committed, it is incriminating. An accomplice is someone who aids or abets a crime, however they are still considered one of the principal actors involved in a crime. This means they, through action or inaction, supported, encouraged, assisted in or otherwise facilitated the commission of a crime. Those who act in this role are seen as having accomplice liability by virtue that they were willingly involved in criminal activity.

The punishments for being an accomplice to a crime will depend on the facts and circumstances of the case. How you were involved, to what degree, how much you knew about the crime, what the crime was and your criminal history would all affect your sentencing for being an accomplice to a crime. Unfortunately, in many cases, the accomplice is given the same punishments as the person who actually executed the crime. However, if you had a minor role in the crime, or were not aware of the significance of the crime, you may not be punished as harshly as those with more significant roles. In order for the prosecution to convict you of a crime by aiding and abetting, they must demonstrate you contributed to the commission of the crime, either directly or indirectly, with words or actions that encouraged or otherwise facilitated the crime. This is a very broad definition of aiding and abetting. You do not have to be actually present when the crime was committed, nor do you have to have been found with the executor of the crime. If you . If you knew about the crime, but

did not encourage, assist with or facilitate its commission, you cannot be charged as a principal actor of the crime. It may be difficult for the prosecution to prove you aided and abetted a crime, so it is important you speak to a criminal defense attorney about your case before pleading guilty. Key to all criminal convictions, you must have demonstrated intent to be an accomplice to the crime. If you unintentionally became involved in a crime, and took action to notify authorities in an attempt to stop it, you cannot be charged with being an accomplice to a crime because you took direct action to not assist its commission in any way.

Those who are not direct accomplices to the commission of a crime but rather are permissive of the criminal behavior after the crime has been committed can also be charged with a crime. Being permissive, even if not present when the crime was committed, by not reporting the crime to the authorities, makes you an accessory to the crime, but not a direct contributor. If you simply assisted the criminal behavior after the fact, you are seen as obstructing justice but are not considered a principal actor to the crime. Accordingly, the punishments for being an accessory to the crime after the fact are less than if you were an accomplice to the crime before or while it was committed. An accessory to a crime can face a fine of up to $5,000 and/or up to one year in a county jail. Sometimes, people who initially agreed to be an accomplice to a crime decide that it is no longer something they want to do. However, up until that point they could have been acting as an accomplice to the crime. You may still face criminal charges as an aider and abettor if you assisted in the crime before hand, but decided to withdrawal from your role. However, if you took action after you withdrew to prevent the crime from happening, you may be able to walk away with an accessory charge. Consult with an experienced criminal defense attorney if you are facing criminal charges for being an accomplice of or accessory to a crime. The prosecution must prove you assisted or encouraged the commission of the crime. A skilled attorney can evaluate the case facts and advise you on what strong evidence the prosecutor has against you and what your potential defense options are.

Are your or a loved one facing charges of aiding and abetting a crime in Tulare, Kings or Fresno County area? Visalia criminal defense attorney Christopher Martens can best advise you on how to proceed with your case. At The Law Offices of Christopher Martens, every client gets the respect they deserve. Attorney Martens has over ten years experience as a criminal defense attorney and has taken over 50 cases all the way to trial. Mr. Martens will not be afraid to fight for your rights in court

What is Complicity or Accomplice Liability?

Created by FindLaw's team of legal writers and editors.

Complicity is the act of helping or encouraging another individual to commit a crime. It is also commonly referred to as aiding and abetting. One who is complicit is said to be an accomplice. But, even though an accomplice does not actually commit the crime, his or her actions helped someone in the commission of the crime.

The concept of accomplice liability means an accomplice faces the same degree of guilt and punishment as the individual who committed the crime. Indeed, accomplices can face the same penalties, including prison time. The key consideration is whether the individual intentionally and voluntarily encouraged or assisted in the commission of the crime, or (in some cases) failed to prevent it.

Elements of Accomplice Liability

While it varies by state, a prosecutor typically must be able to prove the following four elements to convict someone of being an accomplice or aiding and abetting:

Examples of Complicity

The following examples illustrate the many ways an individual may be an accomplice to a criminal act:

Serving as the getaway driver in a bank robbery.Turning off the alarm system of a jewelry store in which you work, knowing that it will be robbed later that evening.Loaning a handgun to someone who you know is planning to commit a crime.Directing a vehicle to a dead-end street where you know an armed carjacker is waiting.

The Difference Between Complicity and Conspiracy

Each state's criminal charges will vary, but typically if you takes an active role in the planning of a crime, you could be charged with being part of a conspiracy. A conspirator agrees with others to commit a future crime, while an accomplice assists, in some way, in the actual commission of a crime. Furthermore, unlike accomplices to a crime, conspirators can be guilty even if their plan is not completed.

Example: If a group of individuals gets together, agrees to plan and commit a robbery, and takes an overt action to accomplish their plan (e.g. purchasing a car, guns, and tools for the robbery), they could each be charged with the crime of conspiracy to commit robbery, even if the robbery never happens. However, if and when the planned robbery is committed by the individuals, they could be charged with both conspiracy and robbery (as principals or accomplices, depending on their role in the robbery).

What Is an Accessory to a Crime?

An accessory to a crime is a person who participates knowingly and voluntarily in the commission of a crime. An accessory can be categorized as before or after the fact (the commission of the crime).   They need not be actually present at the scene of the crime in order to be held liable. The person actually committing the crime is called the "principal".

Contents

How Can One Be an Accessory to a Felony Crime?

An accessory before the fact is one who aids, abets, assists, incites, or encourages another person in the commission of the crime (such as one who prepares a weapon for an assault or provides the matches for arson). An accessory after the fact is someone who shelters, relieves, or assists a felon after a crime has already been committed (such as the driver of a getaway car). Assistance can take the form of financial, material, or even emotional support of the principal actor.

The elements for one to be an accessory to a crime varies from state to state. In order to convict a person for being an accessory to a felony, a prosecutor must be able to prove that the following four elements:

The crime was committed by another individualThe defendant assisted, helped, encouraged, or aided the other person in the commission of the crimeThe defendant acted with intent for the crime to be completed

In most cases, the crime does not have to be actually completed to completion. As long as the defendant aided the other person in committing the crime and had intent for the crime to be completed, then the defendant could be found as being an accessory to the crime.

What Is the Difference Between an Accessory to a Crime and a Conspiracy?

The differences between being a accessory to a crime and committing a conspiracy varies. During a conspiracy, the conspirator and another person plan on committing a crime in the future. The crime does not actually have to be committed or even have

to be started. Once the conspirators make an agreement to commit a crime and both have intent for the crime to actually be committed, than a conspiracy has occurred.

On the other hand, an accomplice or a accessory to a crime has to actually take an active role in the commission of the crime by aiding or assisting.

What About an Accessory to a Felony Crime?

Felony crimes are very serious types of crimes and are punishable by sentences of over one year in prison. Common types of felonies can include homicide crimes, drug violations, sexual assault crimes, and serious property crimes such as arson.

An accessory charge is generally not in itself a felony. However, being an accessory to a felony crime can lead to non-violent felony charges, which will be noted on one's criminal record. This is important, because having a felony charge on a criminal record can sometimes lead to a loss of various privileges, such as being able to own a firearm. An accessory to a felony crime will usually receive a sentence that is less severe than the sentence for the principal actor.

Federal laws state that the penalties for an accessory to a felony are not to exceed half of the maximum prison time or fine that the principal receives. If the principal receives a death sentence, the accessory may be incarcerated for up to 15 years maximum. States may also have their own individual laws governing accessories to a crime.

What Must be Proven for a Person to be Guilty as an Accessory?

A prosecutor would need to prove, beyond a reasonable doubt, that the accused had knowledge that the crime was about to be committed, or has already been committed. Additionally, they would need to prove that the defendant intentionally acted to assist the criminal in their offense.

For example, one who unknowingly provides shelter to a person who committed a felon will not be held guilty of being an accessory after the fact. This is because they did not have knowledge that a felony had been committed.
 RYAN MARSHALL vs. COMMONWEALTH.463 Mass. 529March 8, 2012 - October 15, 2012Suffolk CountyPresent: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

Related Cases:

65 Mass. App. Ct. 571457 Mass. 461

Records And Briefs:

(1) SJC-10997 01 Appellant Marshall Brief(2) SJC-10997 02 Appellee Commonwealth Brief

Oral Arguments

Homicide. Accessory and Principal. Constitutional Law, Double jeopardy. Practice, Criminal, Capital case, Double jeopardy.

This court concluded that where the evidence at a criminal trial had been insufficient to warrant a finding of guilt on an indictment charging the defendant with being an accessory before the fact to murder in the first degree, in violation of G. L. c.274, § 2, and the defendant's conviction had been vacated, a subsequent prosecution for murder in the first degree did not violate the prohibition against double jeopardy [533-535,537-539], even where certain jury instructions given at the previous trial had been erroneous and evidence erroneously had been admitted [539-540].

Discussion of this court's recent decisions regarding the scope of accomplice (or joint venture) liability for criminal offenses. [535-537]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 7, 2011.

The case was reported by Duffly, J.

Richard J. Fallon for the defendant.

Shoshana E. Stern, Assistant District Attorney, for the Commonwealth.

CORDY, J. In February, 2006, a jury convicted Ryan Marshall (defendant) of being an accessory before the fact to murder, G. L. c. 274, § 2 (§ 2), [Note 1] on an indictment alleging that he, "before the said felony was committed, did incite, procure, aid, counsel, hire or command that" four named men murder George R. Carpenter. Although the evidence at trial was sufficient to establish that the defendant had participated in the murderous assault, we reversed his conviction in Commonwealth v. Rodriguez,

Page 530

457 Mass. 461 , 482-488 (2010) (Rodriguez), because the evidence did not establish that he had done any act before the assault to counsel, hire, or otherwise procure it.

Thereafter, the Commonwealth sought and the grand jury returned an indictment charging the defendant with murder for his involvement in the killing. See G. L. c. 265, § 1. The defendant moved to dismiss the indictment, arguing that, because "murder is a form or a 'species' of lesser included offense to accessory before the fact to murder," a second prosecution was barred by double jeopardy. [Note 2] A judge (who was not the trial judge) denied the motion.

Pursuant to G. L. c. 211, § 3, the defendant sought relief from this order from a single justice of the county court, who reserved and reported the following questions:

"(1) [Whether] where the evidence is insufficient to warrant a finding of guilt on an indictment charging a defendant with being an accessory before the fact to murder in the first degree, see G. L. c. 274, § [2], and the defendant's conviction was vacated, [Note 3] a subsequent prosecution for murder in the first degree under that statute would violate the prohibition against double jeopardy; and (2) [Whether] in the circumstances of this case, given the erroneous jury instructions and the erroneously admitted evidence, prosecution of this defendant for murder in the first degree is barred on grounds of double jeopardy?"

We answer both questions in the negative.

Background. 1. Evidence at trial. We summarize the facts from the court's opinion in Rodriguez, supra at 463-466. In the early morning hours of February 16, 2001, the victim was drinking and socializing with friends at the home of Donna Medeiros, the defendant's mother. The defendant, his girl friend,

Page 531

and three friends, Robert Tirado, Jonathan Torres, and Heather Lawrence, arrived at the home shortly thereafter.

At some point, an argument ensued between the victim, the defendant, and Tirado. The confrontation between the victim and Tirado continued down the street from Medeiros's home, where Tirado slashed the tire of the victim's automobile as as the

victim attempted to leave the gathering. The violence escalated when the defendant, Torres, and three more of the defendant's friends, Lionel Rodriguez, Orlando Badillo, and Dennis Smith, arrived at the scene. With the exception of Torres, Tirado and these men attacked the victim. One man struck the victim with a tire iron. The defendant kicked him twice and attempted to throw a trash barrel on him. The victim was rendered unconscious by the beating, and he died later that day as a result of acute massive intra-abdominal hemorrhage due to blunt force trauma.

2. Prior proceedings. For his involvement in the killing, the defendant was indicted as an accessory before the fact to murder in the first degree and was tried with Rodriguez, who had been indicted for murder in the first degree. [Note 4] At trial, the Commonwealth proceeded on the theory that the defendant did "aid" Tirado, Badillo, Smith, and Rodriguez in committing the murder, the prosecutor having conceded that there was no evidence the defendant had counselled, hired, or otherwise procured the felony. The judge, concluding that "[a]ccessory before the fact to felony is largely identical to the joint venture doctrine," accepted this theory. Consequently, at the close of evidence, he told the jury:

"To prove the defendant guilty of being an accessory before the fact to murder, the Commonwealth must prove the following three things beyond a reasonable doubt. Element number one, that someone other than the defendant committed a felony; namely, murder. Element number two,

Page 532

that [the defendant] aided in the commission of the felony. And element number three, that [the defendant] had knowledge that another intended to commit the crime and shared the mental state required for the commission of the particular felony being questioned."

With regard to the second element, the judge told the jury that "the Commonwealth must prove that [the defendant] did assist in the commission of the felony," meaning that the defendant "intentionally participated in some meaningful and significant way by agreeing to stand by, at or near the scene, to render aid, assistance, or encouragement if such became necessary." Aside from a brief statement at the start of the instruction, the judge did not elaborate on the temporal element inherent in the offense of being an accessory before the fact to murder. [Note 5] The jury found the defendant guilty on the indictment of being an accessory before the fact to murder in the first degree on a theory of extreme atrocity or cruelty. [Note 6]

We reviewed the defendant's conviction in Rodriguez, supra at 482-487, and concluded that the language of the indictment, although prescribed by statute, see G. L. c. 277, § 79, [Note 7] improperly conflated the offense of being an accessory before the fact to a felony with that of aiding and abetting a felony, an offense also included within § 2 (see note 1, supra). Rodriguez, supra at 482-485. That is, we construed § 2 as articulating two "separate and distinct offenses" -- aiding a felony and being

Page 533

an accessory before the fact to a felony [Note 8] -- and faulted the Commonwealth for "improperly defin [ing] the offense on which [the defendant] was tried." Id. at 485, 486. We noted that, although this error in the wording of the indictment "may have been excusable on account of adherence to the statutory form . . . , the judge [also] submitted the case to the jury with improper instructions." Id. at 486- 487. As detailed above, the judge had instructed the jury that they could convict the defendant "as an accessory before the fact if he 'aided in the commission of the murder of [the victim].' " Id. at 487. That instruction did not comport with the form of the indictment, which alleged that the defendant acted before the commission of the felony, even though it tracked the evidence at trial, which had established his "active participation in, and

presence during, the commission of the felony." Id. Consequently, we determined that the defendant's conviction of being an accessory bebefore the fact to murder could not stand. Id.

Discussion. The defendant argues, as he did before the motion judge, that the indictment that charges him with murder in the first degree [Note 9] violates the prohibition against double jeopardy. Specifically, he contends that murder is akin to a lesser included offense of accessory before the fact to murder [Note 10] and, therefore, the new proceeding against him runs afoul of the familiar maxim that "a prosecution for a greater offense precludes subsequent

Page 534

prosecution for all its lesser included crimes." Commonwealth v. D'Amour, 428 Mass. 725 , 748 (1999), quoting Costarelli v. Commonwealth, 374 Mass. 677 , 683 (1978). We disagree.

At its core, the prohibition against double jeopardy, which flows from the Fifth Amendment to the United States Constitution, as well as the statutory and common law of Massachusetts, provides that "a person cannot twice be put in jeopardy for the same offence." Commonwealth v. Burke, 342 Mass. 144 , 145 (1961), and cases cited. See Benton v. Maryland, 395 U.S. 784, 794 (1969) (applying Federal constitutional guarantees against double jeopardy to States through Fourteenth Amendment to United States Constitution); Choy v. Commonwealth, 456 Mass. 146 , 147 n.2, cert. denied, 131 S. Ct. 425 (2010); G. L. c. 263, § 7. This principle, however, "is not one rule but several, each applying to a different situation; and each . . . marooned in a sea of exceptions." Note, Twice in Jeopardy, 75 Yale L.J. 262, 263 (1965). Thus, the bar protects against three specific evils -- "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense," Mahoney v. Commonwealth, 415 Mass. 278 , 283 (1993), citing North Carolina v. Pearce, 395 U.S. 711, 717 (1969) -- while tolerating certain conduct from the State. See, e.g., Ray v. Commonwealth, ante 1, 3 (2012), quoting Arizona v. Washington, 434 U.S. 497, 505 (1978), and Commonwealth v. Steward, 396 Mass. 76 , 78 (1995) ( "State and Federal double jeopardy protections bar, 'as a general rule,' retrial of a defendant whose initial trial ends over his objection and without a conviction. . . . However, an exception to the general rule applies where a mistrial is declared as a matter of 'manifest necessity' " [citations omitted]).

From this web of jurisprudence, the defendant has plucked a single strand -- that pertaining to greater and lesser included offenses. He recites the governing principle accurately (the State generally is prohibited from successive prosecutions for a greater and lesser offense, see Brown v. Ohio, 432 U.S. 161, 168-169 [1977]; Edge v. Commonwealth, 451 Mass. 74 , 75-76 [2008]), and applies it creatively. But his presentation is ultimately unpersuasive. Murder, prosecuted on a theory of aiding and abetting, is not a lesser included offense of accessory

Page 535

before the fact to murder. Rather, the two are different species of the same crime.

To elucidate this point, we revisit the Rodriguez case, where we concluded that the actions of one who "aids" are different from the actions of "accessories before the fact," and that the different acts constitute "separate and distinct" offenses. Id. at 484-486 & n.31. Although grounded in the language and structure of the statute, this construction of § 2 goes too far, and is an outlier among our recent decisions regarding the scope of accomplice (or joint venture) liability. That is, although we drove a theoretical wedge between two forms of accomplice liability in Rodriguez, we have renounced elsewhere such "false distinction[s]" that long complicated the doctrine, see Commonwealth v. Zanetti, 454 Mass. 449 , 464 (2009) (Zanetti), and

put forth instead a practical framework grounded in its "essential elements" of knowing participation and shared criminal intent. Id. at 467. See, e.g., Commonwealth v. Ortiz, 424 Mass. 853 , 856-857 (1997) (Ortiz). We affirm these prior holdings, and reconsider the relationship between the charge of murder and that of being an accessory before the fact to murder in light of them.

We turn to our decision in Ortiz, where we reviewed the common-law origins of accomplice liability, as well as the statutory interventions brought by § 2 and its counterpart, G. L. c. 274, § 3 (§ 3). [Note 11] We explained that, at common law, the parties to a felony fell into one of four classifications -- principals in the first or second degree, and accessories before and after the fact. Ortiz, supra. These classifications, however, proved untenable, as they "led to numerous procedural difficulties that tended to shield an accessory before the fact from punishment even though the accessory's active criminal involvement in the felony was clearly established beyond a reasonable doubt." Id. at 857 & n.5. To remedy these infirmities, the Legislature enacted §§ 2 and 3, which, respectively, made "a joint participant in

Page 536

the commission of a felony liable to the same extent as the principal felon" and removed certain jurisdictional impediments to prosecuting an accessory without the principal. Ortiz, supra at 857, 858 & n.6. Although both provisions "continue[d] to use the term 'before the fact,' " id. at 857, the phrase now appears to be a vestige of history, as the statutory changes "abrogate[d] the distinction between principals and accessories before the fact." Id.

The import of this statement comes into sharper focus when viewed alongside our 2009 decision in the Zanetti case. There, we reformulated the jury instructions governing accomplice liability, formally dispensing with the vocabulary of "joint venture" (which adhered to the classifications described above) in favor of the language of "aiding and abetting" (which focused on the essence of the joint venture allegation, knowing participation in the criminal offense). Id. at 467-468. As a result, we crafted a statement of law that hewed more closely to the framework described in the Ortiz case: whether cast as a principal or accessory in the past, a defendant may be held liable for a crime if "the Commonwealth has proved beyond a reasonable doubt that the defendant knowingly participated in the commission of the crime charged, alone or with others, with the intent required for that offense." Zanetti, supra at 468. Drawing from the substantive law of accomplice liability, we further clarified the scope of this intentional participation in "[a]n appropriate jury instruction:"

"Such participation may take any of several forms. It may take the form of personally committing the acts that constitute the crime, or of aiding or assisting another in those acts. It may take the form of asking or encouraging another person to commit the crime, or helping to plan the commission of the crime. Alternatively, it may take the form of agreeing to stand by at, or near, the scene of the crime to act as a lookout, or to provide aid or assistance in committing the crime, or in escaping, if such help becomes necessary."

Id. at 470 (Appendix). Thus, as this instruction recognizes, with §§ 2 and 3 in place, a wide range of conduct underlying a

Page 537

person's liability for a criminal offense, including that which had historically been described as accessory before the fact to a felony or aiding and abetting a felony, plainly falls under the rubric of accomplice liability, and, consequently, may be charged as the substantive offense. [Note 12] See Commonwealth v. Moure, 428 Mass. 313 , 316-318 (1998) (discussing prosecutor's decision to proceed against defendant as accessory before fact to murder under § 2 rather than directly on

substantive felony under § 3 of statute). See also Commonwealth v. Caramanica, 49 Mass. App. Ct. 376 , 381 (2000) (noting that "statutory accessory crimes [i.e., §§ 2 and 3] . . . are often available to prosecutors, but apparently rarely used as a basis for indictment").

It is this last point that controls the case before us. Whether the defendant engages in conduct before the commission of the victim's murder to ensure its accomplishment, aids in its commission by others, or commits the murderous assault himself, he is liable for murder and, if convicted, will be so punished. We cannot say, then, that each is a wholly independent theory of criminal liability. See Commonwealth v. Santos, 440 Mass. 281 , 290 (2003), overruled on other grounds, Commonwealth v. Anderson, 461 Mass. 616 , 633-634 (2012) ("While we sometimes use the term 'theory' of principal liability or 'theory' of joint venture, those are not alternate, differing 'theories' of the crime that are to be subjected to the specific unanimity and verdict slip requirements . . ."). Rather, we recognize the interrelationship among them, and conceptualize them as different routes to the same end: criminal liability as a knowing participant in a crime (here, murder).

With this framework in mind, we return to the potential double jeopardy implications of the second indictment brought against

Page 538

the defendant. As noted above, the prohibition against double jeopardy generally forbids a second prosecution for the same offense after conviction or acquittal. See Mahoney v. Commonwealth, 415 Mass. 278 , 283 (1993), citing North Carolina v. Pearce, 395 U.S. 711, 717 (1969). It does not, however, necessarily bar a retrial where a conviction has been set aside on appeal. See Hicks v. Commonwealth, 345 Mass. 89 , 91 (1962),cert. denied, 374 U.S. 839 (1963), and cases cited ("It has been held repeatedly by this court and by the Supreme Court of the United States that a defendant can be tried a second time for an offence when his prior conviction for that offence has been set aside on his appeal"). See also United States v. Ball, 163 U.S. 662, 672 (1896) ("a defendant, who procures a judgment against him upon an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, for the same offence on which he had been convicted"). [Note 13]

This "exception" to the double jeopardy bar is not without its own exceptions. The State, for example, generally cannot retry a defendant "when an appellate court overturns a conviction because of insufficient evidence." K.B. Smith, Criminal Practice and Procedure § 24.57, at 393 (3d ed. 2007). But, it may do so where other theories (supported by evidence at a first trial) would support a defendant's conviction in the second, see Commonwealth v. Fickett, 403 Mass. 194 , 199-200 n.4 (1988), or where a conviction is reversed on appeal because of a variance between the indictment and the proof established at trial. See Commonwealth v. Ohanian, 373 Mass. 839 , 844 (1977),

Page 539

citing G. L. c. 263, § 8 (noting that, although judgments were reversed, verdicts were set aside, and indictments were dismissed due to fatal variance, such disposition did "not bar conviction for the same crimes on new indictments").

We are of the view that the present case falls within the boundaries of these latter two categories. "In general, a crime must be proved as charged and must be charged as proved." K.B. Smith, Criminal Practice and Procedure, supra at § 15.40, at 872. Here, however, the indictment specifically charged the defendant with engaging in conduct "before the said [murder] was committed" (emphasis added), while the proof at trial established that he joined in the attack by kicking the victim,

and the judge's instructions directed the jury to convict the defendant if they found that he had "intentionally participated" in the murderous assault. Although the proof of liability at trial, and the jury instructions that accompanied it, would have sufficed if the defendant had been indicted simply for the murder itself, they were at variance with the wording of the indictment. Although we did not employ this term specifically, we essentially concluded in Rodriguez, supra at 487, that such a variance was fatal: the defendant was convicted of a crime for which he had not been indicted. See, e.g., Commonwealth v. Ohanian, supra at 843; Commonwealth v. Pearson, 77 Mass. App. Ct. 95 , 101-102 (2010). Our ruling on the defendant's appeal in the Rodriguez case, then, did not erect a double jeopardy bar to subsequent prosecution for the crime proved at the first trial, and the Commonwealth is entitled to try him again under an appropriate charging instrument. See United States v. Ball, supra; Hicks v. Commonwealth, supra. [Note 14]

Although the preceding discussion suffices to address the first reported question, we briefly touch on the second. The single justice asks whether, "in the circumstances of this case, given the erroneous jury instructions and the erroneously admitted evidence [and testimony of the medical examiner], prosecution of this defendant for murder in the first degree is barred on grounds of double jeopardy." The defendant argues that, in

Page 540

framing the question as she does, the single justice flags for our consideration the possibility that Massachusetts common and statutory law may provide greater double jeopardy protections than does the Federal Constitution. Although we may have intimated as much on select occasions, see, e.g., Commonwealth v. Vick, 454 Mass. 418 , 433-435 (2009), we never have "intended to erode . . . our well-established and historic scheme for analyzing double jeopardy principles," Commonwealth v. Niels N., 73 Mass. App. Ct. 689 , 710 (2009) (Cypher, J., dissenting in part), nor do we find cause to depart from them now. As detailed above, we reversed the defendant's first conviction because he was tried and convicted of a crime for which he was not charged. The subsequent indictment, then, does not constitute harassment by way of "multiple and successive prosecutions," compare Commonwealth v. Gallarelli, 392 Mass. 573 , 574 (1977), nor does it amount to an overzealous attempt to obtain "tactical advantage" over the defendant. Glawson v. Commonwealth (No. 1), 445 Mass. 1019 , 1021 (2005). Rather, it serves as an attempt by the Commonwealth to repeat its initial and successful case under an appropriate charging instrument, an outcome that the guarantees against double jeopardy surely tolerate. See Commonwealth v. Fickett, supra. See also G. L. c. 263, § 8.

Conclusion. For the reasons discussed, we answer both of the reported questions in the negative. The matter is remanded to the single justice for further proceedings consistent with this opinion.

So ordered.
FOOTNOTES

[Note 1] General Laws c. 274, § 2, provides: "Whoever aids in the commission of a felony, or is accessory thereto before the fact by counselling, hiring or otherwise procuring such felony to be committed, shall be punished in the manner provided for the punishment of the principal felon."

[Note 2] The defendant also alleged that the successive and multiple prosecutions constituted harassment by the Commonwealth because the original charge of accessory before the fact was sought to eliminate the possibility that he would receive a lesser manslaughter verdict on a murder indictment.

[Note 3] In Commonwealth v. Rodriguez, 457 Mass. 461 , 487-488 & n.34 (2010)

(Rodriguez), we reversed, rather than vacated, the defendant's conviction because he could not be retried as an accessory before the fact. The indictment was dismissed by the Superior Court.

[Note 4] As we explained in Rodriguez, supra at 462 n.4, Robert Tirado, Orlando Badillo, and Dennis Smith also were charged with murder in the first degree for their involvement in the killing, while Jonathan Torres (like the defendant) was indicted as an accessory before the fact to murder. The cases were paired for trial: "Tirado and Torres were tried first; Tirado was convicted of murder in the second degree, and Torres was acquitted. After being tried together, both Badillo and Smith were convicted of murder in the second degree." Id.

[Note 5] The judge told the jury: "The phrase 'before the fact' refers to time. The defendant . . . is accused of having been an accessory to a felony before that felony was committed."

[Note 6] The jury also found Lionel Rodriguez, with whom the defendant had been tried, guilty of murder in the first degree, on a theory of extreme atrocity or cruelty. On appeal, we reduced this conviction to murder in the second degree because, although other properly admitted evidence established that Rodriguez had committed an unlawful killing, certain medical evidence and testimony pertinent to the theory of extreme atrocity or cruelty was erroneously admitted. Rodriguez, supra at 475-482.

[Note 7] General Laws c. 277, § 79, provides in relevant part that the annexed form of an indictment alleging "that A.B., before the said felony was committed, did incite, procure, aid, counsel, hire or command the said (principal) the said felony to do and commit," shall be "sufficient" to allege the crime of accessory before the fact. See Commonwealth v. Daughtry, 417 Mass. 136 , 141-142 n.3 (1994).

[Note 8] Under this rubric, the "aiding" prong (colloquially, "aiding and abetting") captures conduct that constitutes actual assistance in the commission of the felony, and requires some degree of knowing participation. Rodriguez, supra at 484. In contrast, the "accessory" prong encompasses participation in an act "that led up to or in some way contributed to the occurrence of the felony," but that occurred prior to the commission of the felony (i.e., "counselling, hiring or otherwise procuring" it). Id.

[Note 9] This indictment alleges that the defendant, "on or about February 16, 2001 . . . did assault and beat George Carpenter with intent to murder him, and by such assault and beating did kill and murder the said George Carpenter." Although this indictment does not state explicitly that the Commonwealth will proceed on an aiding and abetting theory against the defendant, statements made in the Commonwealth's brief, as well as the approach adopted and the evidence presented in the first trial, plainly support the conclusion that it will.

[Note 10] The defendant reaches this conclusion by arguing that, under the statutory scheme, "everyone guilty as an accessory before the fact is also guilty of the felony, but not vice versa . . . . Put another way . . . murder is 'necessarily accomplished' on commission of accessory before the fact to murder."

[Note 11] General Laws c. 274, § 3, provides in pertinent part: "Whoever counsels, hires or otherwise procures a felony to be committed may be indicted and convicted as an accessory before the fact, either with the principal felon or after his conviction; or may be indicted and convicted of the substantive felony, whether the principal felon has or has not been convicted, or is or is not amenable to justice; and in the last mentioned case may be punished in the same manner as if convicted of being an accessory before the fact. . . ."

[Note 12] This outcome is not surprising, as both prongs of G. L. c. 274, § 2, had long been viewed as a unified theory of joint venture liability. See Commonwealth v.

Ortiz, 424 Mass. 853 , 856 (1997); Commonwealth v. Soares, 377 Mass. 461 , 470, cert. denied, 444 U.S. 881 (1979) ("The theory underlying joint enterprise is that one who aids, commands, counsels, or encourages commission of a crime while sharing with the principal the mental state required for the crime is guilty as a principal"). See also Commonwealth v. Zanetti, 454 Mass. 449 , 468 (2009) (shift to language of aiding and abetting "does not enlarge or diminish the scope of existing joint venture liability").

[Note 13] The United States Supreme Court has explained the origins of this rule succinctly: "At common law a convicted person could not obtain a new trial by appeal except in certain narrow instances. As this harsh rule was discarded courts and legislatures provided that if a defendant obtained the reversal of a conviction by his own appeal he could be tried again for the same offense. Most courts regarded the new trial as a second jeopardy but justified this on the ground that the appellant had 'waived' his plea of former jeopardy by asking that the conviction be set aside. Other courts viewed the second trial as continuing the same jeopardy which had attached at the first trial by reasoning that jeopardy did not come to an end until the accused was acquitted or his conviction became final. But whatever the rationalization, this Court has also held that a defendant can be tried a second time for an offense when his prior conviction for that same offense has been set aside on appeal." Green v. United States, 355 U.S. 184, 189 (1957), citing United States v. Ball, 163 U.S. 662 (1896).

[Note 14] As G. L. c. 274, § 3, expressly provides, one charged with accessory before the fact may be "indicted and convicted of the substantive felony," here, murder.

**In Florida**, False **Report** of a Crime, or 'False Police **Report**,' occurs where a person makes a willful allegation to **law** enforcement regarding the commission of a crime, while knowing that no such crime has occurred. The offense carries misdemeanor penalties, including up to 1 year **in** jail.

# 2. DEFINITION OF FALSE REPORT OF A CRIME

The definition of False Report of a Crime, or 'False Police Report,' is contained in Section 817.49, Florida Statutes. Under the law, it is a criminal offense for a person to willfully and knowingly give false information or make a false report regarding the commission of a crime that the person knows did not actually occur.

False Report of the Commission of a Crime is distinguished from the offense of Giving False Information to Police in that, under Section 817.49, a person reports a crime that they know did not actually take place.

**REQUIRED PROOF AT TRIAL**

To prove the offense of False Report at trial, the prosecution must establish the following four elements beyond a reasonable doubt:

> The accused willfully gave or said (or caused to be given or said) false information or a false report about the commission of an alleged crime in Florida;
> The accused knew the information or report was false because no such crime had actually been committed;
> The information or report was given or said (or caused to given or said) to a law enforcement officer; and
> The accused knew or should have known that the person to whom the information or report was given was a law enforcement / police officer.

# PENALTIES FOR FALSE REPORT

False Police Report / False Report of a Crime is classified as a first degree misdemeanor. As such, the offense carries penalties of up to 1 year in jail or 12 months of probation, and a $1,000.00 fine.

# DEFENSES TO FALSE POLICE REPORT

There are many defenses available under Florida law to contest a charge of False Police Report. The most common defenses are factual or evidentiary in nature.

**REPORT NOT PROVABLY FALSE**

Often, law enforcement, in investigating an incident, will jump to conclusions and take one person's side over another. In their haste to arrest someone, they may pursue charges against the person they choose not to believe. Where there is contrary evidence supporting a defendant's side of the story, this may put into contention whether the report was in fact false.

**MISTAKEN BELIEF / MISINFORMATION**

Even if the report turns out to be false, the prosecution must establish that the accused knew that the information contained in the report was false. Where the accused was simply mistaken, given misinformation by someone else, or misconstrued the situation, this will provide a powerful defense.

**NO KNOWLEDGE OF POLICE**

Even if the information is false, and even if the accused knew it was false, the information or report must be given or made to a law enforcement officer, not a bystander or other person. Thus there often defenses where the accused did not know the person was a police officer, or did not intend the information they gave to reach the hands of officers.

# What Happens When You File A False Police Report?

If you're a witness or victim of a crime, one of the first steps to justice is filing a police report, which helps prompt an investigation. And while it is imperative to be completely honest and detailed when making a statement to the authorities, sometimes false statements are given, instead. So, why would somone file a false police report?

There are a number of reasons – sometimes it's done to shift the focus of an investigation away from oneself. On other occasions, a false police report may be made in order to make an innocent party appear guilty. Regardless of the reasons, filing a false police report is a serious crime that carries real consequences.

## The Charges: Lying To The Police

A false police report always involves the element of knowingly supplying incorrect information, which typically results in the charge of lying to the police or obstruction of justice. There are varying consequences depending on how much damage the lie causes (more on that in a moment), but there is one sure-fire way to avoid getting yourself in that situation.

You've heard it before – maybe in a soap opera or a movie – don't talk to the police without an attorney present. And while it may seem like a cliché line, it is the single most important piece of legal advice when it comes to deterring someone from filing a false police report.

## The Consequences: A Misdemenor or Felony Charge

Often, the result of a false report is the obstruction or hindrance of a police investigation. Depending upon the jurisdiction, a false police report may be charged as a misdemeanor or a felony. Misdemeanor charges may result in jail terms of one year or less. Typically, the defendant must also pay fines. If a person is charged with a felony, they may be looking at more than a year in jail and substantial fines. The person who made the false report may also be liable in a civil suit, such as if their report caused damage to another's reputation.

At the federal level, the consequences become even more serious. A false report that involves terrorism is treated the most severely, with prison terms of between seven and 20 years being common. The courts may also consider a false report of terrorism as a violent crime even if no violence occurred.

## The Defense: A Criminal Lawyer

If you are in a situation where you have filed a false police report, whether or not it was intentional, it is best to hire a criminal defense attorney as soon as possible. They may be able to argue that the statements were not made knowingly or that the statements were not intended to obstruct the work of the police. Defending a false report case is tricky, but it can be successfully handled.

If you've ever seen Netflix's *Making A Murderer* docuseries, you know just how complex and difficult it can be to clear someone's name after providing the police with false information. The case of Brenden Dassey is a globally-known example of what can happen when someone speaks to the police without a criminal defense lawyer present.

Brenden Dassey was convicted for life after admitting to charges of rape and murder. The documentary attempts to falsify Dassey's statement to the police, and while it appears to the public that he was coerced into lying to the officer, he is still in prison. However, if Dassey's report to the police

was in fact false, as the show makes it seem, he could have avoided the entire situation if he would have had a criminal defense lawyer present at the time of the interrogation.

Dassey's case is just one possible avenue when it comes to lying to the police. There are many other outcomes that can result if you file a false police report. To learn more, check out how long you have to file a police report after a crime has taken place.

here are the criminal offence for kidnapping

Kidnapping

The crime of unlawfully seizing and carrying away a person by force or Fraud, or seizing and detaining a person against his or her will with an intent to carry that person away at a later time.

The law of kidnapping is difficult to define with precision because it varies from jurisdiction to jurisdiction. Most state and federal kidnapping statutes define the term kidnapping vaguely, and courts fill in the details.

Generally, kidnapping occurs when a person, without lawful authority, physically asports (i.e., moves) another person without that other person's consent, with the intent to use the abduction in connection with some other nefarious objective. Under the Model Penal Code (a set of exemplary criminal rules fashioned by the American Law Institute), kidnapping occurs when any person is unlawfully and non-consensually asported and held for certain purposes. These purposes include gaining a ransom or reward; facilitating the commission of a felony or a flight after the commission of a felony; terrorizing or inflicting bodily injury on the victim or a third person; and interfering with a governmental or political function (Model Penal Code § 212.1).

Kidnapping laws in the United States derive from the Common Law of kidnapping that was developed by courts in England. Originally, the crime of kidnapping was defined as the unlawful and non-consensual transportation of a person from one country to another. In the late nineteenth and early twentieth centuries, states began to redefine kidnapping, most notably eliminating the requirement of interstate transport.

At the federal level, Congress passed the Lindbergh Act in 1932 to prohibit interstate kidnapping (48 Stat. 781 [codified at 18 U.S.C.A. §§ 1201 et seq.]). The Lindbergh Act was named for Charles A. Lindbergh, a celebrated aviator and Air Force colonel whose baby was kidnapped and killed in 1932. The act provides that if a victim is not released within 24 hours after being abducted, a court may presume that the victim was transported across state lines. This presumption may be rebutted with evidence to the contrary. Other federal kidnapping statutes prohibit kidnapping in U.S. territories, kidnapping on the high seas and in the air, and kidnapping of government officials (18 U.S.C.A. §§ 1201 et seq., 1751 et seq.).

A person who is convicted of kidnapping is usually sentenced to prison for a certain number of years. In some states, and at the federal level, the term of imprisonment may be the remainder of the offender's natural life. In jurisdictions that authorize the death penalty, a kidnapper is charged with a capital offense if the kidnapping results in death. Kidnapping is so severely punished because it is a dreaded offense. It usually occurs in connection with another criminal offense, or underlying crime. It involves violent deprivation of liberty, and it requires a special criminal boldness. Furthermore, the act of moving a crime victim exposes the victim to risks above and beyond those that are inherent in the underlying crime. The chief judicial concern with the charge of kidnapping is Double Jeopardy, which is multiple punishment for the same offense. It is prohibited by the Fifth Amendment to the U.S. Constitution. Kidnapping often is an act that facilitates another offense, such as rape, Robbery, or assault. Rape, robbery, and assault often involve the act of moving a person against his or her will, which is the gravamen (i.e., the significant element) of a kidnapping charge. Thus, a persistent problem with kidnapping prosecutions is in determining whether a kidnapping conviction would constitute a second punishment for the same act.

Legislatures have passed statutes, and courts have fashioned rules, to prevent and detect double jeopardy in kidnapping cases. Generally, these laws and rules hold that for kidnapping to be charged as a separate crime, some factor must set the asportation apart from a companion crime. Most courts will sustain multiple convictions if the asportation exposes the victim to increased risk of harm or results in harm to the victim separate from that caused by the companion offense. In other jurisdictions, the test is whether the asportation involves a change of environment or is

designed to conceal a companion offense.

In most states, an asportation of a few feet may constitute the separate offense of kidnapping; in other states, distance is not a factor. In New York State, for example, the focus of the kidnapping statute is not distance, but purpose. Thus, an asportation of 27 city blocks might not constitute kidnapping if it is merely incidental to a companion crime (People v. Levy, 15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842 [N.Y. 1965]). Likewise, an asportation from the borough of Manhattan to the borough of Queens might not constitute kidnapping if it plays no significant role in the commission of another crime (People v. Lombardi, 20 N.Y.2d 266, 282 N.Y.S.2d 519, 229 N.E.2d 206 [Ct. App. 1967]).

Some states have eliminated the asportation element from their kidnapping statutes. In Ohio, for example, kidnapping is defined in part as restraining the liberty of another person (Ohio Rev. Code Ann. § 2905.01 [Baldwin 1996]). This creates an increased risk of double jeopardy in kidnapping convictions because, by definition, every robbery, rape, or assault would constitute kidnapping. However, the Ohio state legislature has enacted a statute that prohibits multiple convictions for the same conduct unless the defendant exhibits a separate animus (i.e., a separate intent) to commit a separate crime (§ 2941.25). Whether the prosecution proves a separate animus to kidnap is a Question of Fact based on the circumstances surrounding the crime.

In State v. Logan, 60 Ohio St. 2d 126, 397 N.E.2d 1345, 14 Ohio Op. 3d 373 (1979), the Supreme Court of Ohio held that the defendant could not be convicted of both rape and kidnapping when he had moved the victim a mere few feet and had released the victim immediately after the rape. Under the facts of the case, the asportation had no significance apart from the rape offense. According to the court, the defendant had displayed no animus beyond that necessary to commit rape, so punishment for both rape and kidnapping was not warranted.

In contrast, in State v. Wagner, 191 Wis. 2d 322, 528 N.W.2d 85 (Ct. App. 1995), the appeals court upheld a separate conviction for kidnapping. In Wagner, the defendant approached two women on two separate occasions in a laundromat. Both times, the defendant tried to force the women into a bathroom to rape them. He was convicted of two counts of attempted first-degree sexual assault, one count of kidnapping while armed, and one

count of attempted kidnapping while armed. On appeal, he argued that he should not have been convicted of kidnapping because, under section 940.31(1)(a) of the Wisconsin Statutes, kidnapping is defined in part as the carrying of a person "from one place to another," and he had not taken his victims to another place. The court disagreed, holding that forced movement from one room to another falls within the meaning of thef the kidnapping statute. Ultimately, the appeals court affirmed the defendant's sentence of 72 years in prison.

The kidnapping of children has presented a particularly emotional issue for lawmakers. In 1984, in response to the kidnapping and murder of his child Adam, John Walsh founded the National Center for Missing and Exploited Children (NCMEC). NCMEC serves as a resource in providing assistance to parents, children, law enforcement, schools, and the community in recovering missing children and raising public awareness about ways to help prevent child abduction.

In 1996, the kidnapping and murder of Amber Hagerman in Texas inspired the Dallas/Fort Worth Association of Radio Managers and local law enforcement agencies in north Texas to create the nation's first "AMBER Alert" plan. AMBER, in addition to being Amber Hagerman's first name, also serves as an acronym for America's Missing: Broadcast Emergency Response. "Amber Alert" plans allow the development of an early warning system to help find abducted children by broadcasting information over radio and television to the public as quickly as possible. This information includes descriptions and pictures of the missing child, the suspected abductor, a suspected vehicle, and any other information available and valuable to identifying the child and suspect.

From its beginnings in Texas, the AMBER Alert system spread until, by 2002, 55 versions had been adopted at local, regional, and statewide levels. Eighteen states had adopted the plan by 2002, urged on by the NCMEC, which adopted the AMBER Alert as one of its top priorities. As a result, many people were convinced that the late 1990s and new millennium saw a sharp decline in child kidnappings, which were well publicized, thanks to AMBER Alerts. In fact, the FBI reported that child abductions had actually declined from the 1980s, from an average between 200 and 300 per year to only 93 in 2000.

The AMBER Alerts were considered so successful—credited with recovering 30 children—that Congress passed a national AMBER Alert bill as part of the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today (PROTECT) Act of 2003, Pub. L. No. 108-21, 117 Stat. 650. Under this bill, the attorney general, in cooperation with the secretary of transportation and the chairman of the Federal Communications Commission (FCC), appoints a National AMBER Alert Coordinator to oversee the communication network. The AMBER Alert Coordinator at the Justice Department works with states, broadcasters, and law enforcement agencies to set up AMBER plans, to serve as a point of contact to supplement existing AMBER plans, and to facilitate appropriate regional coordination of AMBER Alerts. Grants were provided to help set up effective AMBER Alert programs at the state and local levels.

Further readings

Blinka, Daniel D., and Thomas J. Hammer. 1995. "Court of Appeals Digest." Wisconsin Lawyer 68 (April).

Diamond, John L. 1985. "Kidnapping: A Modern Definition." American Journal of Criminal Law 13.

Hillebrand, Joseph R. 1991. "Parental Kidnapping and the Tort of Custodial Interference: Not in a Child's Best Interests." Indiana Law Review 25.

Kaplan, John, and Robert Weisberg. 1991. Criminal Law: Cases and Materials. 2d ed. Boston: Little, Brown.

Leahy, Patrick. 2002. Statement Regarding an AMBER Alert National System. Washington D.C.: Federal Document Clearing House (September 4).

National Center for Missing and Exploited Children. "National AMBER Alert Network Will Now Become Law." Available online at <www.ncmec.org>.

Onion, John F. 1995. "Mass Media's Impact on Litigation: A Judge's Perspective." Review of Litigation 14.

Cross-references

# kidnapping

the taking of a person against his/her will (or from the control of a parent or guardian) from one place to another under circumstances in which the person so taken does not have freedom of movement, will, or decision through violence, force, threat or intimidation. Although it is not necessary that the purpose be criminal (since all kidnapping is a criminal felony) the capture usually involves some related criminal act such as holding the person for ransom, sexual and/or sadistic abuse, or rape. It includes taking due to irresistible impulse and a parent taking and hiding a child in violation of court order. An included crime is false imprisonment. Any harm to the victim coupled with kidnapping can raise the degree of felony for the injury and can result in a capital (death penalty) offense in some states, even though the victim survives. Originally it meant the stealing of children, since "kid" is child in Scandinavian languages, but now applies to adults as well.

Copyright © 1981-2005 by Gerald N. Hill and Kathleen T. Hill. All Right reserved.

kidnapping an offence in English common law of taking a person away against his will by force or fraud. For Scotland, see PLAGIUM.

Collins Dictionary of Law © W.J. Stewart, 2006

KIDNAPPING. The forcible and unlawful abduction and conveying away of a man, woman, or child, from his or her home, without his or her will or consent, and sending such person away, with an intent to deprive him or her of some right. This is an offence at common law.

A Law Dictionary, Adapted to the Constitution and Laws of the United States. By John Bouvier. Published 1856.
 kidnapping statutes recognize different types and levels of kidnapping and assign punishment accordingly. New York State, for example, bases its definition of first-degree kidnapping on the purpose and length of the abduction. First-degree kidnapping occurs when a person abducts another person to obtain ransom (N.Y. Penal Code § 135.25 [McKinney 1996]). First-degree kidnapping also occurs when the abduction lasts for more than 12 hours and the abductor intends to injure the victim; to accomplish or advance the commission of a felony; to terrorize the victim or a third person; or to interfere with a governmental or political function. An abduction that results in death is also first-degree kidnapping. A first-degree kidnapping in New York State is a class A-1 felony, which carries a sentence of at least 20 years in prison (§ 70.00).

New York State also has a second-degree kidnapping statute. A person is guilty of second-degree kidnapping if he or she abducts another person (§ 135.20). This crime lacks the aggravating circumstances in first-degree kidnapping, and it is ranked as a class B felony. A person who is convicted of a class B felony in New York State can be sentenced to one to eight years in prison (§ 70.00).

Two key elements are common to all charges of kidnapping. First, the asportation or detention must be unlawful. Under various state and federal statutes, not all seizures and asportations constitute kidnapping: Police officers may arrest and jail a person they suspect of a crime, and parents are allowed to reasonably restrict and control the movement of their children.

Second, some aggravating circumstance must accompany the restraint or asportation. This can be a demand for money; a demand for anything of value; an

attempt to affect a function of government; an attempt to inflict injury on the abductee; an attempt to terrorize a third party; or an attempt to commit a felony.

In most states, kidnapping statutes specify that any unlawful detention or physical movement of a child, other than that performed by a parent or guardian, constitutes kidnapping. An abduction of a child thus need not be accompanied by some other circumstance, such as Extortion or physical injury, to qualify for the highest level of kidnapping charge. In the absence of an aggravating circumstance, an unlawful, non-consensual restraint or movement is usually charged as something less than the highest degree or level of kidnapping.

Many states have enacted special laws for Carjacking, a specialized form of kidnapping. Generally, carjacking occurs when one person forces a driver out of the driver's seat and steals the vehicle. Carjacking is a felony whether the aggressor keeps the victim in the car or forces the victim from the car. In California, a carjacking statute is contained within the penal code's chapter on kidnapping, and it carries a sentence of life imprisonment without the possibility of parole. (Cal. Penal Code § 209.5 [West]).

Kidnapping laws are similar to laws on unlawful or felonious restraint, parental kidnapping, and False Imprisonment. These crimes cover the range of unlawful-movement and unlawful-restraint cases. Felonious or unlawful restraint, also known as simple kidnapping, is the unlawful restraint of a person that exposes the victim to physical harm or places the victim in Slavery. It is a lesser form of kidnapping because it does not require restraint for a specified period or specific purpose (such as to secure money or commit a felony). False imprisonment is a relatively inoffensive, harmless restraint of another person. It is usually a misdemeanor, punishable by no more than a year in jail. Parental kidnapping is the abduction of a child by a parent. The law on parental kidnapping varies from jurisdiction to jurisdiction: Some jurisdictions define it as a felony, others as a misdemeanor. Many states consider parental kidnapping to be less offensive than classic kidnapping because of the strong bond between parents and children.


A crime was committed by another individual;The defendant "aided, counseled, commanded, or encouraged" the other person in the commission of the crime.The defendant acted with the requisite mental state in their jurisdiction, for


If I say no I do not agree to the motion to strike  the other officers, would it matter?

All I am trying to do and I believe that I am, is stand up for my rights as an American citizen, a black man fighting for his equal rights, which was violated but  gang of hoodlums who is been protected by the same people who took an oath to serve and protect.  example, knowingly or purposefully, to assist in the crime.

 I had requested for documents that you haven't provided yet since you would  like to use my criminal background as your defense I would like proof of the day I was a convicted felon any documents that was signed buy me stated by me that I'm a convicted felon. By law I am required have three withheld judication  do the research and see how many do I have  if you would like to use my criminal background my 2012 case possession of cannabis I highly recommend you to contact my previous Attorney Felipe Jaramillo, Attorneys Hugo Apellaniz  they can fill you in with any information with me and the 2012 case possession of cannabis that I never had they know it and they could provide that information for you. I haven't receive an email on notification that the deposition transcript is completed when will you inform me on that information so I can come come by and go over it? And I would like a copy of the deposition video as well.

and I see the judge granted you the 90 days extension I will be sending putting in a motion to the judge.

I am willing to do a polygraph test and I am requesting the same from every officer that dealt with me throughout the years. From 2009 to this 2017 case, I have all the names if you need a list. It's my rights.

Sincerely

Wilhelrms T AAndre

Sent from Yahoo Mail on Android

On Mon, Mar 23, 2020 at 2:11 PM, Hampton Johnson
<WHJohnson@jambg.com> wrote:

Good afternoon Mr. Andre,

Pursuant to the Local Rules for the Southern District, I am required to confer with you prior to filing any motion requesting relief from the Court, except in limited circumstances. I intend to file a motion to strike the additional officers you have named [all officers not named Biro] from this claim because you have not pled any causes of action against them and the time within which to do so has expired. Please advise if you oppose my motion or agree to my motion. Thank you.

Sincerely,

**W. Hampton Johnson IV**
Partner
Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A.
2455 East Sunrise Boulevard
Suite 1000
Ft. Lauderdale, Florida 33304
Phone: 954-463-0100
Fax:    954-463-2444

The information transmitted is privileged and confidential. It is intended solely for the review and use of the named recipient. Any other review or distribution of the communication is strictly prohibited. If you have received this transmittal in error, please (1) notify the sender immediately by telephone (954) 463-0100, (2) delete this information from all databases, and, (3) if printed, return all pages to the sender by U.S. mail. You will be reimbursed for any long distance charges and mailing costs.

Good afternoon Counselor,

My name is Yvonne Nolan and I am writing on behalf of Wilhelrms Teddys Andre my nephew, who has had the misfortune of police misconduct that was perpetrated upon him by Mr. Ryan Biro and his colleagues form the Sunrise police department, on April 4, 2017.

On the above date, mr. Andre and his cousins had planned on going out, he stopped by the the hotel where they were staying at the time, (Sunrise Grand hotel). After entering the hotel to inform his cousins that he is here, mr. Andre went back to the (which is registered to me) I loaned it to him. Mr. Fell a sleep in the passenger side of the vehicle and was awoken by tapping on the window this was at approximately 2:20 am, and bright lights shining in his face.

It was officer Biro, who had somewhat interacted with Mr. Andre and his friends and cousins earlier on April 3, 2017 and Aldo a few days prior at the hotel. Officer Biro as Mr. Andre if he was ok, Mr. Andre indicates that he was fine, fell asleep while he was waiting. Officer Biro asked for his ID Mr. Andre asked why and then stated that he would like to call his cousins who may have fallen asleep as well, office Biro said no you don't have to call any one. Mr. Andre said then you can check with the hotel front desk, officer Biro said no he don't have to do anything. But just give him the ID.

To be shot, Mr. Andre was pulled out of the vehicle, kicked, strangled, transported to the hospital (a bystander saw and called the EMS).

He was arrested for weapon possession and marijuana, none of which was proven in court and he was acquitted, he has spent 18 months in jail awaiting his trial because the judge would not grant him bail. Needless to say he has lost everything he worked for including an opportunity to be a radio station manager, we had just celebrated the contract a couple days prior and he was to travel to Maryland the day of the incident.

At this time Mr. Andre as filed suit against the officer and as you can guess, he is getting the runaround, delays after delays and extension after extension been granted by the court, because he is pro-se.

1

Judge Moreno is the judge presiding over the case, he initially had indicated that a court order mediation done prior to trial, which was set for August but had since moved to November.

Mr. Andre choice a mediator Ms. Karen Evans, officer Biro's attorney filed a motion to Strick the mediation and mediator. Then later changed his mind. The judge then later went and strick the attorney's motion and stated that being that Mr. Andre is pro-se he does not have to attend the mediation, which now gives their attorney another extension/delay, what have you.

Mr. Andre had reached out to countless attorneys, who at first was ready to assist then later changed their mind with no explanation, unsure if they were intimidated by the Sunrise rise police department.

We are seeking your firm's assistance, the case # is 19-62-18-1-CIV Moreno Andre v Biro.

2