July 06, 2020

```
 1                UNITED STATES DISTRICT COURT
 2                SOUTHERN DISTRICT OF FLORIDA
 3                CASE #: 0:19-cv-62181-FAM
 4
 5   WILHELRMS TEDDYS ANDRE,
 6           Plaintiff,
 7   vs.
 8   RYAN T. BIRO, individually,
 9           Defendant.
10   _____/
11
12        REMOTE VIDEO TELECONFERENCE DEPOSITION OF
13                       YVONNE NOLAN
14
15      DATE TAKEN:            July 6, 2020
16      TIME AT WITNESS
17      LOCATION:              9:12 a.m. - 9:40 a.m. ET
18      WITNESS LOCATION:      Duluth, GA
19
20   Reported By:
21   DANIELLE SARGIS, 1017
22   Appearing remotely via video teleconference from
23   Spalding County, Georgia
24
25
```

Page 2

1  APPEARANCES:
2
3  On behalf of Plaintiff:
4      WILHELRMS TEDDYS ANDRE, PRO SE
5      9351 NW 46th Court
6      Sunrise, FL 33351
7      Wt_andre@yahoo.com
8      APPEARED VIA VIDEO TELECONFERENCE
9
10 On behalf of Defendant:
11     JOHNSON, ANSELMO, MURDOCH, BURKE, PIPER &
12     HOCHMAN, P.A.
13     2455 East Sunrise Boulevard, Suite 1000
14     Fort Lauderdale, FL 33304
15     whjohnson@jambg.com
16     BY: W. HAMPTON JOHNSON, IV, ESQUIRE
17     APPEARED VIA VIDEO TELECONFERENCE
18
19
20
21
22
23
24
25

Page 3

1                      INDEX
2
3  DEPOSITION OF YVONNE NOLAN             PAGE
4  Examination by Mr. Johnson              6
5  Disclosure                              27
6  Certificate of Reporter                 28
7  Certificate of Transcriptionist         29
8
9              (No Exhibits Marked.)
10
11
12
...
25

Page 4

1                    P R O C E E D I N G S
2  Remote deposition of YVONNE NOLAN taken under oath in
3  the above cause, pursuant to Notice and Agreement of
4  Counsel in accordance with the Georgia Civil Practice
5  Act, before DANIELLE SARGIS, CER, Certified Court
6  Reporter, State of Georgia.  The witness did not
7  request to read the transcript.
8                       - - - - - -
9           (Witness presented government-issued
10 identification and identity is verified.)
11         THE COURT REPORTER: The parties
12 participating in this proceeding acknowledge that I am
13 not physically present in the proceeding room and that
14 I will be reporting this proceeding remotely.  They
15 further acknowledge that in lieu of an oath
16 administered in person, my apologies, one second, in
17 person, I will administer the oath remotely pursuant
18 to the Georgia Board of Court Reporting Advisory
19 Opinion No. 2020-01.
20       The parties and their counsel consent to this
21 arrangement and waive any objections to this manner of
22 reporting.  Please indicate your agreement by stating
23 your name and your agreement on the record.
24         MR. JOHNSON: William Hampton Johnson, I
25 represent Ryan T. Biro and another individual named

Page 5

1  **9:04:43 xxxx (inaudible) police officers in this
2  matter, and I agree.
3          THE COURT REPORTER: All right.  And, Ms.
4  Nolan, if you could, please raise your right hand?  Do
5  you solemnly swear or affirm the testimony you're
6  about to give in this matter is the truth, the whole
7  truth, and nothing but the truth?
8          THE WITNESS: Yes, ma'am.
9  THEREUPON,
10                     YVONNE NOLAN
11 was called as a witness and after having been first
12 duly sworn, was deposed and testified as follows:
13         THE COURT REPORTER: Thank you.  All right.
14 And I already verified her -- I already verified her
15 ID so we can go ahead, and we can begin.
16         MR. JOHNSON: Thank you --
17         THE WITNESS: Okay.
18         MR. JOHNSON: -- Madam Court Reporter.  We
19 did not have the Plaintiff agree to your pre-read
20 statement on the record.  I'm just wondering if he
21 could state his objection?
22         THE COURT REPORTER: Mr. Andre?
23         MR. ANDRE: Yes.
24         THE COURT REPORTER: Just need you to state
25 your name, and that you are in agreement with the

Page 6
1  read-on statement about the remote reporting.
2           MR. ANDRE:  Yes.
3           THE WITNESS:  State your name.
4           MR. ANDRE:  Wilhelrms Andre.
5           MR. JOHNSON:  Okay.  And your agreement --
6  you're in agreement, Mr. Andre, with the reporting
7  that was read on right now?
8           MR. ANDRE:  (Inaudible)
9           MR. JOHNSON:  I'm sorry.  What is your
10 response?
11          MR. ANDRE:  I can't even hear you.  Can you
12 repeat that?
13          MR. JOHNSON:  Yeah, sure.  So the court
14 reporter had read a message into the record regarding
15 the fact that she is not here present in person with
16 us due to the COVID19 pandemic, so we're conducting
17 this deposition remotely and that nobody objects to
18 the fact we're conducting remotely for the safety of
19 all involved.  We just need to know on the record if
20 there's any objection.
21          THE WITNESS:  Do you have any objections?
22          MR. ANDRE:  No.  (Inaudible)
23          MR. JOHNSON:  Okay.  Great.
24          THE COURT REPORTER:  We can hardly -- he can
25 hardly hear so that's why.

Page 7
1           MR. JOHNSON:  All right.  Thank you.  Sorry
2  about that.  That's okay.  We'll go ahead and get
3  started then.
4                       EXAMINATION
5  BY MR. JOHNSON:
6     Q.   Ma'am, can you please state your full name
7  for the record?
8     A.   Yvonne Nolan.
9     Q.   Can you spell that for me?
10    A.   Y-V-O-N-N-E, N-O-L-A-N.
11    Q.   Where do you live currently, Ms. Nolan?
12    A.   Duluth, Georgia.
13    Q.   Okay.  And what is your residential address
14 in Duluth?
15    A.   ███████████████████████,
16 ███.
17    Q.   And can you spell me that road me again?
18 I'm sorry.
19    A.   ███████████████████
20    Q.   And who lives with you at that address?
21    A.   Mr. Andre off and on between Georgia and
22 Florida.
23    Q.   Anyone else?
24    A.   I'm sorry?
25    Q.   Does anyone else live there with you?

Page 8
1     A.   No.
2     Q.   What's your date of birth?
3     A.   ███████.
4     Q.   And where were you born?
5     A.   I'm sorry?
6     Q.   Where were you born?
7     A.   Where?  Jamaica.
8     Q.   Okay.  And --
9          THE COURT REPORTER:  Can you repeat -- I'm sorry.
10 Ma'am, can you repeat where you were born?  Can you
11 repeat where you were born one more time?
12         THE WITNESS:  J-A-M-A-I-C-A.
13 BY MR. JOHNSON:
14    Q.   And how long have you resided in the United
15 States?
16    A.   Since '18 (inaudible)
17    Q.   Are you a United States' citizen?
18    A.   Yes.
19    Q.   Okay.  When did you obtain your citizenship?
20    A.   '19
21    Q.   Can you give me the exact year or date?
22    A.   No, I don't remember very exact.
23    Q.   Okay.  Can you say it's been quite a while?
24    A.   It's been a while.
25    Q.   What is your current marital status?

Page 9
1     A.   What is my current what?
2     Q.   Marital status?
3     A.   My -- single.
4     Q.   Okay.  Have you ever been married?
5     A.   Yes.
6     Q.   Okay.  And who were you married to?
7     A.   Two males.  I'm sorry.  I just said.  I
8  don't have a lot of time so if you can jump to the
9  questions that you want to ask.  I mean, I'm not sure
10 if that's pertinent to the case at hand, but yes.  I
11 was married twice.
12         MR. ANDRE:  No.  It's not relevant right now.
13 Can we -- can we get straight to the questions?  We
14 don't have much time, so let's just get straight to
15 the questions that need to be asked.
16         MR. JOHNSON:  Okay.  I appreciate that, but I'm
17 entitled to ask the questions.  So if you quickly
18 answer them, then the quicker we'll get through this
19 and keep this --
20         MR. ANDRE:  All right.  Let's --
21         THE WITNESS:  (Inaudible)
22         MR. ANDRE:  Let's avoid the unnecessary
23 questions.
24         THE WITNESS:  All right.  I've told him.
25         MR. ANDRE:  I've sent you a lot of -- I sent you

```
                                                  Page 10
 1  a lot of questions in order for you to (inaudible), so
 2  let's avoid unnecessary questions and get straight to
 3  the questions.  I'm away from (inaudible).
 4       THE WITNESS:  Okay.
 5       MR. ANDRE:  I need to -- I need to get going with
 6  this.
 7       THE WITNESS:  Okay.  All right.  I was married
 8  twice.  Okay.
 9  BY MR. JOHNSON:
10       Q.   And are you currently employed?
11       A.   Yes.  Like I said, I'm at work right now.
12       Q.   And what's the name of your employer?
13       A.   American Independent Insurance Company.
14       Q.   And how long have you worked for them?
15       A.   Two -- two-and-a-half years.
16       Q.   And what is your position with that company?
17       A.   Serious injury adjuster.
18       Q.   Okay.  You're an insurance claims adjuster;
19  is that correct?
20       A.   Yes.
21       Q.   Do you handle cases that are in suit or pre
22  suit or both?
23       A.   Both.
24       Q.   And you're currently on serious personal
25  injury?

                                                  Page 11
 1       A.   Yes.
 2       Q.   Do you handle any police liability cases
 3  such as the one that Mr. Andre is claiming against the
 4  **9:12:31 (inaudible)?
 5       A.   Say that again?  I'm sorry?
 6       Q.   Have you ever worked on any claims for
 7  lawsuits regarding police and law abuses of force?
 8       A.   No.  That's not insurance-related or
 9  injury-related I should say, at least not in my
10  capacity here.
11       Q.   What's your highest level of education
12  completed?
13       A.   College.
14       Q.   And where was that?
15       A.   Chicago, Illinois.
16       Q.   And the name of the institution?
17       A.   Myon (**9:13:19) (phonetic).
18       Q.   And what degree specifically?
19       A.   Computer science.
20       Q.   Okay.  And what year did you obtain that
21  degree?  And again, if you don't remember the exact
22  year and date, that's fine.
23       A.   I'm going to move on.
24       Q.   Okay.  Well, is your response that you don't
25  recall or --

                                                  Page 12
 1       A.   I don't remember the exact year --
 2       Q.   Understood.
 3       A.   -- and I've been looking at my resume.
 4       Q.   Have you ever been arrested?
 5       A.   No, sir.
 6       Q.   Okay.  Have you ever been involved in any
 7  lawsuits?
 8       A.   No, sir.
 9       Q.   Have you, yourself, ever made a claim that
10  did not progress to the point of actual filing of a
11  lawsuit like a --
12       A.   No.
13       Q.   -- pre-insurance settlement?
14       A.   Nope.
15       Q.   Okay.  How long have you lived at your
16  current address in Duluth?
17       A.   Almost three years.
18       Q.   Okay.  And this accident essentially
19  occurred in April of 2017.  Where were you living at
20  that point?
21       A.   Here in Georgia as well.
22       Q.   Okay.  What was your address?
23       A.   [redacted]
24  .
25       Q.   You said [redacted]?

                                                  Page 13
 1       A.   [redacted].
 2       Q.   And did Mr. Andre live with you at that
 3  address from time to time?
 4       A.   Yes.
 5       MR. ANDRE:  Yes.
 6       THE WITNESS:  Yes.
 7       MR. JOHNSON:  And, Mr. Andre, just for your
 8  knowledge, obviously you're welcome to voice any
 9  objections to the questions.  It's a natural thing,
10  but you just can't assist the witness in answering and
11  in response, okay?
12       MR. ANDRE:  Sir, can we avoid the unrelevant
13  questions and get straight to the point?  You've been
14  ignoring all emails and everything, so you can't
15  really tell me what I cannot do.  You're not following
16  your own procedure, what you're saying to me.  So we
17  need to get this done and over with you.  You're
18  pretty much a waste of time right now.
19       MR. JOHNSON:  Again, I will just ask if you have
20  any objections to --
21       THE WITNESS:  Okay, okay, okay.
22       MR. JOHNSON:  Thank you.
23  BY MR. JOHNSON:
24       Q.   Ms. Nolan, do you have any children?
25       A.   One.
```

Page 14

1  Q. And is that child an adult?
2  A. Yes.
3  Q. And male or female?
4  A. Female.
5  Q. And does she live in Georgia as well?
6  A. North Carolina.
7  Q. And what is her name?
8  A. I'm not divulging her information.
9  Q. Okay. Just so you know, just as one as a
10 possible witness, I'm entitled to ask that so --
11 A. You can ask. You can ask. That's fine. I
12 appreciate that.
13 Q. You're just not testifying to that?
14 A. I'm not just -- I'm not going to give her
15 name out.
16 Q. You said she is an adult. Is she still
17 under the age of 18?
18 A. Yes.
19 MR. ANDRE: I'm pretty sure you'll understand
20 when she's said she's not going to name her.
21 BY MR. JOHNSON:
22 Q. Okay. And, again, this is -- do you --
23 A. Just -- let's just go.
24 Q. Right. Okay. So do you know if she has any
25 knowledge of incident?

Page 15

1  A. She has knowledge. She's the one that
2  picked up my vehicle from the impound or the tow yard,
3  I should say.
4  MR. ANDRE: The day -- the day it was towed --
5  MR. JOHNSON: Mr. Andre --
6  MR. ANDRE: -- she was -- (Simultaneous
7  speaking.)
8  MR. JOHNSON: Mr. Andre, please refrain --
9  THE WITNESS: Wait, wait.
10 MR. JOHNSON: -- from making --
11 THE WITNESS: Wait, wait.
12 MR. JOHNSON: -- remarks on the record, please.
13 THE WITNESS: Okay.
14 BY MR. JOHNSON:
15 Q. So, Ms. Nolan, being that she does have some
16 information and knowledge regarding this incident, I
17 will appreciate it if you will just provide her name
18 as a potential witness?
19 A. No. Okay. She's not a witness to what
20 occurred. She only -- when I called her and said, I'm
21 back in Georgia. Could you pick up the vehicle from
22 that -- that's all she has -- and tow it back to me.
23 That's the information that she has.
24 Q. Okay. Did you talk with her about why the
25 vehicle was impounded?

Page 16

1  A. Of course.
2  Q. Okay.
3  A. I told her why the vehicle was impounded.
4  Q. Again, I would just ask that you provide her
5  name --
6  A. Fine.
7  Q. -- knowing that --
8  A. Well --
9  Q. -- she has that information.
10 A. I'm not divulging her name.
11 Q. I would not like to involve the federal
12 court system in trying to determine this (inaudible)
13 but so you refuse it.
14 MR. ANDRE: Okay. Can I -- can I interrupt?
15 MR. JOHNSON: Yeah. Go ahead.
16 MR. ANDRE: If you can't -- if you don't believe
17 -- if you can believe -- if you believe that will be
18 the best (inaudible) you can, it's not going to be
19 good on your end. Okay. And we can proceed with the
20 questioning because my aunt has to go back to work.
21 (Simultaneous speaking)
22 THE COURT REPORTER: I can't -- I can't --
23 everybody --
24 THE WITNESS: Gentlemen --
25 THE COURT REPORTER: I need everybody to --

Page 17

1  THE WITNESS: Gentlemen --
2  THE COURT REPORTER: I need everybody to stop.
3  THE WITNESS: Gentlemen.
4  THE COURT REPORTER: I need everybody to stop. I
5  can't catch everything on the record --
6  THE WITNESS: Yes.
7  THE COURT REPORTER: -- if everyone is talking at
8  the same time. It's already difficult with the Zoom.
9  And there's a little bit of audio issues, but
10 everybody has to talk one at a time, or I cannot get
11 the record down.
12 BY MR. JOHNSON:
13 Q. Okay. So your testimony is you're not going
14 to provide her name, Ms. Nolan; is that correct?
15 A. Well, Mr. Johnson, I have 20 minutes to go
16 back to work. And so far, you have not asked me any
17 questions pertaining to this case. You asked me my
18 age, my name, all of that. That's fine. Now we are
19 jumping on something else. I would like to go back to
20 it because I'm popping up emails asking me why I'm not
21 doing this (inaudible) already. Okay.
22 I'd like to answer all your questions; however,
23 these particular questions that you're asking my
24 daughter is not relevant because she was not a witness
25 to the case. I asked her to do me a favor, to please

**Page 18**

1   pick up the vehicles from the tow yard.  I sent her my
2   information.  I told her why the vehicle was in the
3   tow yard, told her to take pictures of the vehicle and
4   all that was damaged and send it back to me.  She did.
5   And she sent the vehicle back to me via transport.
6   That's all she has to deal with the case.
7        Q.   Okay.  So --
8        A.   What is your next question?
9        Q.   She took photographs of the vehicle?
10       A.   Well, I sent it to Mr. Andre who already
11  sent it back to you as he already has that.
12       Q.   Okay.
13       A.   It's taken on the day when she took it out
14  of the tow yard.  She took it right there in front of
15  the tow yard as to the condition of the vehicle,
16  inside the trunk, everything.  And Mr. Andre already
17  provided those photos to you.
18       Q.   Okay.  And, Ms. Nolan, just so you know,
19  you're here under subpoena and, you know --
20       A.   I understand that.
21       Q.   -- I'm doing my best to --
22       A.   I feel -- I do, of course, just like you do.
23  So I understand.
24       Q.   Yes.
25       A.   That's why I'm here.

**Page 19**

1        Q.   Yes.  And I'm trying my best to accommodate
2   your work schedule, but just know that I'm under no
3   obligation to do so by the Court.
4            THE WITNESS:  Okay.
5            MR. ANDRE:  Are you -- are you --
6            THE WITNESS:  Okay.  Okay.
7            MR. ANDRE:  -- paying her?
8            THE WITNESS:  Okay.  All right.  Let's go.
9            MR. ANDRE:  Are you paying her?
10           THE WITNESS:  Let's move on.  Let's move on.
11           (Simultaneous speaking.)
12           THE WITNESS:  No.  Let's move on because time
13  wears on, so please move on.
14  BY MR. JOHNSON:
15       Q.   Outside of picking up the car from the tow
16  yard and taking photographs of the damage to the car,
17  was there any other involvement by your adult child?
18       A.   I'm sorry?  Is there -- I'm sorry.  Can you
19  repeat that question again, please?
20       Q.   Sure.  Outside of picking up the subject
21  vehicle from the two yard and taking photographs, is
22  there any other involvement by your adult daughter?
23       A.   No.  No, sir.
24       Q.   The adult daughter in question, what is the
25  name of her father?

**Page 20**

1        A.   What is the name of her father?  Her father
2   -- her father died years ago, sir.
3        Q.   Okay.  I'm sorry to hear that.
4        A.   Thank you.
5        Q.   What was his name?
6        A.   What's his name?  His name is Andrew.
7   That's the first name.  The last name is Reid.
8        Q.   I'm sorry.  You cut --
9        A.   Reid.
10       Q.   Reid.
11       A.   His last name is Reid.
12       Q.   R-E-E-D?
13       A.   R-E-I-D.
14       Q.   Thank you.  How do you know Mr. Andre?
15       A.   He's my nephew.
16       Q.   So Mr. Andre is the son of a brother or
17  sister or yours?
18       A.   Why?  It's usually that way, right?
19       Q.   Well, I'm asking you.  Is that correct?
20       A.   Yes.  Correct.
21       Q.   Okay.  Perfect.
22       A.   Go and sit.
23       Q.   So is it your sister or --
24       A.   It's through marriage.
25       Q.   Oh, it's through marriage, okay.  So can you

**Page 21**

1   explain the connection for me?
2        A.   You know, my husband -- what -- I'm just
3   trying to get along the relevance of your questions at
4   times.  And several times I will stop.  I'm like and
5   asking myself, okay, what is the relevance at this
6   point of this particular question.  Okay.
7            Let me divulge.  It's my husband's side of the
8   family, all husbands deceased, that side of the
9   family.  And he --
10       Q.   Which husband was it?  Was it Mr. Reid?
11       A.   No.  Mr. Reid wasn't -- wait, wait, wait,
12  wait.  Mr. Reid wasn't my husband.
13       Q.   Understood.  Right.  That is, okay, your
14  daughter's father.  But you and Mr. Reid were not
15  married?
16       A.   No, sir.
17       Q.   Okay.  The husband where Mr. Andre comes in
18  by marriage, what was his name?
19           MR. ANDRE:  That is irrelevant right now.
20           THE WITNESS:  Okay.  Let me just --
21           MR. ANDRE:  The question (simultaneous speaking)
22           THE WITNESS:  -- answer though.
23           MR. ANDRE:  You're really upset -- you're really
24  upset --
25           THE WITNESS:  Okay.  Wait, wait, wait.

### Page 22

1  MR. JOHNSON: Mr. Andre, please.
2  MR. ANDRE: You're asking an irrelevant question
3  right now.
4  THE COURT REPORTER: Okay. I can't -- I can't --
5  I need everybody -- hold on.
6  THE WITNESS: Give her a second.
7  THE COURT REPORTER: I cannot catch everything --
8  THE WITNESS: Okay. (Inaudible.)
9  THE COURT REPORTER: I need one person to speak
10 at a time, please.
11 THE WITNESS: Okay. I apologize.
12 MR. JOHNSON: Would you like me to ask the
13 question again, Ms. Nolan?
14 MR. ANDRE: That's irrelevant.
15 THE WITNESS: Just wait, Mr. Andre. Just wait a
16 second. Just --
17 MR. ANDRE: I'm the victim so (inaudible) --
18 MR. JOHNSON: Mr. Andre --
19 MR. ANDRE: You're wasting time right now. Can't
20 you just get to the questions that need to be asked.
21 THE WITNESS: Well, just hold on a second. Just
22 let me just ride through and because this is occupying
23 my time. It's 9:35, and we're still here. Okay.
24 Let's go.
25 MR. JOHNSON: Would you like me to --

### Page 23

1  THE WITNESS: You're asking -- are you asking
2  which one of my husbands' sister child this is?
3  MR. JOHNSON: Yes, ma'am.
4  THE WITNESS: Okay. It's my second husband in
5  Chicago.
6  BY MR. JOHNSON:
7  Q.  And what was his name?
8  A.  His name? Oh, Lord, (inaudible), his name
9  is Norman William -- was -- he passed away.
10 Q.  Understood.
11 A.  Oh, yeah. All right.
12 Q.  And your sister was the mother of Mr. Andre;
13 is that correct?
14 A.  Wait. That's cool. Wait, wait.
15 Q.  Do you think you could --
16 A.  Okay. Just let me answer that question
17 because obviously this question is going to justify
18 what this client did. So let me answer the question.
19 Yes.
20 Q.  Okay. And what was her name?
21 MR. ANDRE: (Inaudible)
22 A.  Laura.
23 Q.  Laura Williams?
24 A.  No. Her last name wasn't Williams.
25 Q.  Okay. What was her last name?

### Page 24

1  A.  Oh, I know you're looking for a (inaudible).
2  Her last name -- okay. So she was married a couple of
3  times. Her last name -- she is part of the family, so
4  I do not know the extent of anything regarding her
5  family. So, therefore, that's something that you
6  might have to ask Mr. Andre because I was married into
7  the family. I didn't go digging through to find out
8  A, B, C, D, E, F, G of their family. I'm married to
9  Mr. Williams and lived in Chicago for a while.
10 MR. ANDRE: And Mr. Andre's right here
11 (simultaneous speaking). You can ask him about it. I
12 have a answer for you.
13 MR. JOHNSON: Ms. Nolan, I'm just -- you're here,
14 under oath, okay? So you've got to answer the
15 questions to the best of your ability and knowledge.
16 THE WITNESS: Yes.
17 MR. JOHNSON: That's good.
18 THE WITNESS: I don't want to say or add any
19 stuff onto whatever you're asking because I don't know
20 the details of that part of the family because it's
21 something I was married into.
22 MR. ANDRE: And I'm right here. So Andre's right
23 here.
24 THE WITNESS: Yes. He's on, so you can ask him
25 any details of that. So --

### Page 25

1  MR. JOHNSON: And again, for purposes of this
2  deposition --
3  (Simultaneous speaking.)
4  MR. JOHNSON: Mr. Andre, if you interrupt me
5  again, I'm going to terminate the deposition, and I'm
6  going to move for sanctions. Madam Court Reporter,
7  get this on the record please.
8  (Simultaneous speaking.)
9  THE COURT REPORTER: Right now, we are not on the
10 record. I'm not catching anything because I can't
11 hear what anyone is saying right now.
12 MR. JOHNSON: Okay. We're on the record then.
13 THE COURT REPORTER: Yes.
14 MR. JOHNSON: I'm suspending the deposition based
15 on the conduct of Mr. Andre. And we'll reconvene at a
16 later date and time as the Court has addressed these
17 issues, okay? I'll order the transcript. Thank you,
18 Madam Court Reporter. And thank you, Ms. Nolan.
19 MR. ANDRE: This has been recorded -- this has
20 been recorded for security purposes.
21 MR. JOHNSON: And also let the record reflect
22 that Mr. Andre apparently was recording this
23 deposition without our knowledge or permission.
24 (Simultaneous speaking.)
25 MR. JOHNSON: Thank you.

**Page 26**

1  (Inaudible)
2  THE COURT REPORTER: Thank you. You guys are
3  free to go.
4  THE WITNESS: Bye.
5  (Remote video teleconference Deposition concluded
6  at 9:40 a.m. ET)
7  (Reading and Signing of the Deposition Transcript
8  was not requested by the witness and all parties.)

**Page 27**

1  DISCLOSURE
2  Pursuant to Article 10.B of the Rules and
3  Regulations of the Board of Court Reporting of the
4  Judicial Council of Georgia, I make the following
5  disclosure:
6  U.S. Legal Support was contracted by the party
7  taking the examination to provide court reporting
8  services for this examination and there is no contract
9  that is prohibited by O.C.G.A. 15-14-37 (a) and (b) or
10 Article 7.C of the Rules and Regulations of the Board
11 for the taking of this examination.
12 There is no contract to provide reporting
13 services between U.S. Legal Support or any person with
14 whom U.S. Legal Support has a principal and agency
15 relationship nor any attorney at law in this action,
16 party to this action, party having a financial
17 interest in this action, or agent for an attorney at
18 law in this action, party to this action. Any and all
19 financial arrangements beyond our usual and customary
20 rates have been disclosed and offered to all parties.
21 DATED this 13th day of July, 2020.
22
23 _____
24 DANIELLE SARGIS, CER No. 1017
25 Georgia CCR No. 4807-8516-8072-7040

**Page 28**

1  CERTIFICATE OF REPORTER
2
3  STATE OF GEORGIA
4  COUNTY OF SPALDING
5
6  I hereby certify that the foregoing
7  transcript electronically recorded by me, as stated in
8  the caption, and the questions and answers thereto
9  were reduced to typewriting under my direction; that
10 the foregoing pages represent a true, complete and
11 correct transcript of the evidence given remotely via
12 video teleconference on July 6, 2020 by YVONNE NOLAN,
13 who was first duly sworn by me.
14 I FURTHER CERTIFY that I am not a relative,
15 employee, or attorney, or counsel of any of the
16 parties, nor am I a relative or employee of any of the
17 parties' attorneys or counsel connected with the
18 action, nor am I financially interested in the action.
19 DATED this 13th day of July, 2020.
20
21 _____
22 DANIELLE SARGIS CER No. 1017
23 Certified Court Reporter
24 Georgia CCR No.: 4807-8516-8072-7040
25 Expires: 04/01/2021

**Page 29**

1  CERTIFICATE OF TRANSCRIPTIONIST
2
3  I, Nancy M. Dewitz, do hereby certify that I
4  transcribed the electronic recording produced by
5  DANIELLE SARGIS of the deposition of YVONNE NOLAN; and
6  that the foregoing transcript is a true transcript of
7  said electronic recording.
8
9  I FURTHER CERTIFY that I am not a relative,
10 employee, attorney, or counsel of any of the parties,
11 nor am I a relative or employee of any of the parties'
12 attorneys or counsel connected with the action, nor am
13 I financially interested in the action.
14
15 DATED this 13th day of July, 2020.
16
17 _____
18 Nancy M. Dewitz
19 AAERT CET No. 719